[This opinion has been published in *Ohio Official Reports* at 68 Ohio St.3d 238.]

HILLMAN ET AL., APPELLEES AND CROSS-APPELLANTS, *v.* HASTINGS MUTUAL INSURANCE COMPANY, APPELLANT AND CROSS-APPELLEE.

[Cite as *Hillman v. Hastings Mut. Ins. Co.*, 1994-Ohio-527.]

*Insurance—Underinsured motorist coverage—Underinsurance claim must be paid, when.*

(No. 92-2330—Submitted December 14, 1993—Decided February 9, 1994.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Franklin County, No. 92AP-717.

―――――――――――

*Clark, Perdue & Roberts Co., L.P.A.*, and *Dale K. Perdue*, for appellees and cross-appellants.

*John C. Nemeth & Associates*, *John C. Nemeth* and *David A. Caborn*, for appellant and cross-appellee.

*Raymond J. Tisone*, for *amicus curiae*, Ohio Academy of Trial Lawyers.

―――――――――――

{¶ 1} The judgment of the court of appeals is affirmed on authority of paragraph three of the syllabus in *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809.

A.W. SWEENEY, DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., concurs separately.

WRIGHT, J., dissents.

―――――――――――

**PFEIFER, J., concurring.**

{¶ 2} I agree that the retroactive application of the third syllabus paragraph of *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St. 3d 500, 620 N.E.2d 809,

mandates that we affirm the court of appeals because *Savoie*, in all personal injury cases, eliminates the setoff against underinsurance policy limits of amounts received from other insurance carriers in the absence of intrafamily stacking. However, I would also eliminate the physical contact rule as requested by the cross-appellants.

————————————

**MOYER, C.J., concurring separately.**

{¶ 3} I concur separately in the judgment entry in the above-styled case. As my dissent in *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, stated, I do not agree with the law announced in the majority decision. Nevertheless, it is the law on the issue in the above-styled case. As I believe all parties should receive equal application of the law announced by this court, and only for that reason, I concur in the judgment entry.

————————————

**WRIGHT, J., dissenting.**

{¶ 4} The majority has decided this case on the basis of *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809. It is my view that the majority has gone further than it did in *Savoie* in this matter. What has happened here, *sub silentio*, is the conversion of uninsured/underinsured motorist coverage to "excess" insurance. All of this, of course, is being done on the theory that R.C. 3937.18(A)(1) and (2) coupled with R.C. 3937.18(E) are somehow ambiguous. The majority in Savoie did not limit the operation and effect of R.C. 3937.18(A)(2) and 3937.18(E), which indicate with clarity that an insurer such as Hastings has the right to set off against its policy limits the amount paid by the tortfeasor's insurer. A setoff of underinsured/uninsured motorist coverage is permitted under R.C. 3937.18(E) provided the setoff is clearly and unambiguously set forth in the policy. See *In re Nationwide Ins. Co.* (1989), 45 Ohio St.3d 11, 543 N.E.2d 89, at the syllabus. In footnote 5 of *In re Nationwide*, this court provided an example of how

a setoff is to be calculated, which applies directly to the instant case. The example set forth in *In re Nationwide*, wherein the amount actually recovered from the persons liable to the insured are set off against the limit of uninsured/underinsured liability coverage, is consistent with the General Assembly's intent in enacting R.C. 3937.18. The legislative history of Am.Sub.H.B. No. 22, as introduced by Representative R. James on January 2, 1979, provides the following example in discussing the effect of the bill:

"The policy, as originally issued, had limits of coverage below the amount of underinsured motorist coverage in the injured party's policy. For example, assume that the motor vehicle inflicting the damage is covered by policy limits of $12,500/$25,000 but the injured party's insurance policy has limits of $100,000/$300,000. Under the definition in the bill, the motor vehicle inflicting the damage would be underinsured by $87,500/$275,000, and accordingly the injured person or persons would be able to recover up to, but not exceeding, those amounts under the injured party's underinsured motorist coverage."

{¶ 5} When the example set forth by the General Assembly is applied to the facts in the instant case, Hastings is entitled to set off $283,100 (the amount paid by the tortfeasor's insurer) against its policy limit ($300,000), yielding $16,900 available for payment to the injured party. What is amazing is that the majority's decision is based upon the theory that R.C. 3937.18 is somehow "ambiguous" and must be "narrowly construed."[1] As stated in the dissent in *Savoie*, there is simply

---

1. It is obvious that the General Assembly needs to further strengthen the language of R.C. 3937.18(E), which states:

"In the event of payment to any person under the coverages required by this section and subject to the terms and conditions of such coverages, the insurer making such payment to the extent thereof is entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury or death for which such payment is made, including any amount recoverable from an insurer which is or becomes the subject of insolvency proceedings, through such proceedings or in any other lawful manner. No insurer shall attempt to recover any amount against the insured of an insurer which is or becomes the subject of insolvency proceedings, to the extent of his rights against such insurer which such insured assigns to the paying insurer."

nothing ambiguous in the statute and one would hope the General Assembly would address this alleged ambiguity forthwith.

_____