[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 220.]

COLE ET AL., APPELLEES, *v.* HOLLAND; NATIONWIDE INSURANCE COMPANY, APPELLANT.

[Cite as *Cole v. Holland*, 1996-Ohio-105.]

*Insurance—Motor vehicles—Pursuant to former R.C. 3937.18, an underinsurance claim must be paid, when—Determining amount of underinsurance coverage to be paid.*

————————————

Pursuant to former R.C. 3937.18, an underinsurance claim must be paid when the individual covered by an uninsured/underinsured policy suffers damages that exceed those monies available to be paid by the tortfeasor's liability carriers. In determining the amount of underinsurance coverage to be paid on a claim involving an accident governed by former R.C. 3937.18, the underinsurance provider is entitled to set off the amounts actually recovered from the tortfeasor's liability carriers against the insured's total damages, rather than against its policy limits. (*Savoie v. Grange Mut. Ins. Co.* [1993], 67 Ohio St.3d 500, 620 N.E.2d 809, paragraph three of the syllabus, applied and followed.)

————————————

(No. 94-2569—Submitted February 21, 1996—Decided August 7, 1996.)

APPEAL from the Court of Appeals for Summit County, No. 16703.

————————————

{¶ 1} On May 29, 1991, plaintiff-appellee Richard W. Cole, while driving alone in his auto, was injured in a motor vehicle accident with another vehicle. Richard Cole (seeking recovery for personal injury) and his wife, appellee Marilou S. Cole (seeking recovery for loss of consortium), filed suit against the other driver, Bryan C. Holland, in the Summit County Court of Common Pleas. The complaint

was subsequently amended to include appellant Nationwide Insurance Company as a defendant, and claims for a declaratory judgment and breach of contract were added. The amended complaint stated that Holland was insured under a policy with Colonial Insurance Company, with a liability limit of $12,500.

{¶ 2} The amended complaint also stated that appellees were insured under a policy with appellant, and that this policy provided uninsured/underinsured coverage with limits of $100,000 per person and $300,000 per occurrence. The declaratory judgment portion of appellees' suit sought to ascertain the rights and obligations pursuant to the underinsurance coverage of this policy.

{¶ 3} Appellant and appellees each moved for summary judgment. At that time, they agreed that the $100,000 per person limit of underinsurance coverage applied. By conceding that the per person limit applied, appellees dropped their argument that the derivative claim of Marilou Cole for loss of consortium constituted a separate claim for purposes of determining the applicable policy limit. However, the parties disagreed as to how the $12,500 that appellees were to receive from the tortfeasor's insurer affected appellant's obligation under the policy. Appellant argued that it was entitled to set off the $12,500 against the $100,000 policy limit, so that its obligation to pay appellees could not be greater than $87,500. Appellees argued that appellant was not entitled to a setoff against the policy limit, but only against their damages up to the policy limit, so that the full $100,000 of underinsurance coverage remained available to them.

{¶ 4} In its first ruling on these summary judgment motions, the trial court granted appellant's motion, and found that appellant could set off the $12,500 payment against the policy limit. The trial court considered the applicability of *Savoie v. Grange Mut. Ins. Co*. (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, to the setoff issue, and determined that *Savoie*, because it did not overrule previous decisions of the Supreme Court of Ohio upholding setoffs against policy limits, did not require a contrary result. Appellees filed a motion for reconsideration of the

trial court decision, which was denied. Shortly thereafter, the trial court *sua sponte* determined that reconsideration might be appropriate "[b]ased on a recent Ohio Supreme Court decision" and gave leave to each side to file memoranda supporting their positions.

{¶ 5} The trial court ultimately determined that reconsideration was in order, and vacated its earlier decision that appellant was entitled to a setoff against the policy limit. The trial court decided that a concurring opinion in *Hillman v. Hastings Mut. Ins. Co.* (1994), 68 Ohio St.3d 238, 239, 626 N.E.2d 73, 74, clarified *Savoie* on the setoff issue. The trial court granted summary judgment for appellees, finding that the full policy limit of $100,000 in underinsurance coverage was available to them, despite the $12,500 to be received from the tortfeasor's insurer.

{¶ 6} The court of appeals affirmed the judgment of the trial court.

{¶ 7} The cause is now before this court upon the allowance of a discretionary appeal.

_____

*Patrick J. D'Andrea, Lee A. Schaffer* and *Dean A. Young*, for appellees.

*Robert J. Drexler*, for appellant.

*Mark W. Ruf*, urging affirmance for *amicus curiae*, Ohio Academy of Trial Lawyers.

*Weston, Hurd, Fallon, Paisley & Howley, Timothy D. Johnson, Gregory E. O'Brien* and *Daniel A. Richards*, urging reversal for *amicus curiae*, Ohio Association of Civil Trial Attorneys.

*Roetzel & Andress Co., L.P.A., Ronald B. Lee* and *Laura M. Faust*, urging reversal for *amici curiae*, Progressive Insurance Company, Leader National Insurance Company, Ohio Insurance Institute, and State Auto Insurance Company.

_____

**ALICE ROBIE RESNICK, J.**

**{¶ 8}** The issue presented is whether a provider of underinsurance coverage may set off money received by its insured from a tortfeasor's insurer against the insured party's damages, or whether the setoff may be against the relevant policy limit.

**{¶ 9}** Former R.C. 3937.18(A)(2) required "[u]nderinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." Am.Sub.H.B. No. 1, 142 Ohio Laws, Part I, 1661, 1739-1740.

**{¶ 10}** At this point, we note that if an injured party's damages do not exceed the amount of recovery available from the tortfeasor's liability insurers, the tortfeasor is not underinsured and underinsurance coverage does not come into play. Likewise, if the injured party's damages do exceed the amount available from the tortfeasor's liability insurers, but do not exceed the relevant policy limit of the injured party's underinsurance coverage, that injured party will recover the full extent of his or her damages, with the underinsurance provider paying those damages not covered by the tortfeasor's liability insurers. In that situation, the tortfeasor is underinsured, but the setoff issue does not come into play. The setoff issue arises only when the party seeking to recover pursuant to underinsurance coverage suffers damages that exceed the policy limit of underinsurance coverage

4

after the injured party has been partially compensated for those injuries by the tortfeasor's liability insurers.

{¶ 11} It is therefore clear that no issue of double recovery arises when considering setoff, because any analysis involving setoff begins at the starting point that the tortfeasor's liability insurance is not sufficient to adequately compensate the injured party seeking the underinsurance coverage. Furthermore, in cases of very serious injury when sizable damages are involved, the injured party as a practical matter faces severe undercompensation, even if the setoff question is resolved in the injured party's favor, because the limit of the underinsurance policy acts as a cap on the amount of recovery.

{¶ 12} In *James v. Michigan Mut. Ins. Co.* (1985), 18 Ohio St.3d 386, 18 OBR 440, 481 N.E.2d 272, this court construed a predecessor statute to former R.C. 3937.18(C), virtually the same as current R.C. 3937.18(E),[1] and held at paragraph two of the syllabus: "An insurer may apply payments made by or on behalf of an underinsured motorist as a setoff directly against the limits of its underinsured motorist coverage, so long as such setoff (1) is clearly set forth in the terms of the underinsured motorist coverage and (2) does not lead to a result wherein the insured receives a total amount of compensation that is less than the amount of compensation that he would have received if he had been injured by an uninsured motorist."

{¶ 13} In *In re Nationwide Ins. Co*. (1989), 45 Ohio St.3d 11, 543 N.E.2d 89, we held at the syllabus: "A setoff against the limits of underinsured and

---

1. R.C. 3937.18(E) provides:

"In the event of payment to any person under the coverages required by this section and subject to the terms and conditions of such coverages, the insurer making such payment to the extent thereof is entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury or death for which such payment is made ***."

uninsured motorist coverage is permitted under R.C. 3937.18(E) provided the setoff is clearly set forth in the provisions of the insurance policy."

{¶ 14} As a result of *James* and *In re Nationwide*, it was then settled that former R.C. 3937.18 allowed an insurer to set off payments received by its insured from other sources against the underinsured motorist coverage *policy limit* to reduce the amount to be paid to the insured.

{¶ 15} However, our decision in *Savoie, supra,* has affected the way the courts of this state have been resolving the setoff question. Although *Savoie* did not overrule *James* and *In re Nationwide*, and moreover did not specifically find any provision of former R.C. 3937.18 to be ambiguous or unconstitutional relative to setoffs, courts of this state (including the trial court and the court of appeals in the case *sub judice*) have been relying on paragraph three of the syllabus of *Savoie*, as well as on the discussion in Part III of that opinion, and on their own independent reasoning, to decide that insurers must set off proceeds received by their insureds from tortfeasors' liability insurers against the insureds' damages, rather than against the policy limit.

{¶ 16} In *Savoie*, this court held at paragraph three of the syllabus: "An underinsurance claim must be paid when the individual covered by an uninsured/underinsured policy suffers damages that exceed those monies available to be paid by the tortfeasor's liability carriers. (*Hill v. Allstate Ins. Co.* [1990], 50 Ohio St.3d 243, 553 N.E.2d 658, overruled.)"

{¶ 17} In concurring opinions in two cases summarily decided on the authority of *Savoie*, members of this court appeared to clarify paragraph three of the syllabus of *Savoie* to indicate that the insurer's setoff applies against the insured's damages, not against the policy limit of underinsurance coverage. See *Hillman v. Hastings Mut. Ins. Co.* (1994), 68 Ohio St.3d 238, 239, 626 N.E.2d 73, 74 (Pfeifer, J., concurring) ("*Savoie*, in all personal injury cases, eliminates the setoff against underinsurance policy limits"); *Newman v. United Ohio Ins. Co.*

6

(1994), 69 Ohio St.3d 1204, 1205, 631 N.E.2d 157, 158 (Douglas, J., joined by A.W. Sweeney, Resnick, F.E. Sweeney and Pfeifer, JJ., concurring in denial of motion for reconsideration) ("*Savoie* [1] requires setoff; [2] requires that any setoff be against the insured's *damages* [*not the written limits* of underinsured coverage]; and [3] that paragraph three of the syllabus of *Savoie* applies to '*** *all* personal injury cases ***' *** and not *just* to wrongful death cases."). (Emphasis *sic*.)

{¶ 18} We note that, effective October 20, 1994, R.C. 3937.18(A)(2) was amended to provide, in part: "Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." Am.Sub.S.B. No. 20, 145 Ohio Laws, Part I, 204, 210-211.

{¶ 19} After reviewing the text of Sections 7, 8, and 9 of Am.Sub.S.B. No. 20, we recognize that the General Assembly, through the operation of that Act, intended to explicitly supersede various holdings of *Savoie*. Particularly relevant to our consideration here is Section 8 of Am.Sub.S.B. No. 20, which provides: "It is the intent of the General Assembly in amending division (A)(2) of section 3937.18 of the Revised Code to declare and confirm that the purpose and intent of the 114th General Assembly in enacting division (A)(2) of section 3937.18 in Am.H.B. 489 was, and the intent of the General Assembly in amending section 3937.18 of the Revised Code in this act is, to provide an offset against the limits of the underinsured motorist coverage of those amounts available for payment from the tortfeasor's bodily injury liability coverage."

**{¶ 20}** Appellant does not specifically argue, and we observe no indication in the text of Am.Sub.S.B. No. 20, that the General Assembly intended amended R.C. 3937.18(A)(2) to have retroactive effect. R.C. 1.48 provides that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." Although the General Assembly was crystal clear in stating its desire to supersede *Savoie*, it would have had to specifically manifest an intention for the statute to have retroactive effect in order for the statute to so operate. See *Nease v. Med. College Hosp*. (1992), 64 Ohio St.3d 396, 398, 596 N.E.2d 432, 434; *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 106, 522 N.E.2d 489, 495. Since Am.Sub.S.B. No. 20 contains no retrospective language, amended R.C. 3937.18(A)(2) operates only prospectively.[2] Consequently, pending causes of action accruing prior to October 20, 1994, the effective date of Am.Sub.S.B. No. 20, are controlled by the third syllabus paragraph of *Savoie*, and by the underinsurance statute applicable at the time of the decision in *Savoie*, former R.C. R.C. 3937.18. See Am.Sub.H.B. No. 1, 142 Ohio Laws, Part I, 1661, 1739-1740.

**{¶ 21}** Our view that Am.Sub.S.B. No. 20 does not operate retrospectively is consistent with the way the courts of appeals have been resolving this question. See, *e.g*., *United Servs. Auto. Assn. v. Mack* (May 17, 1995), Clark App. No. 94-CA-32, unreported, 1995 WL 301437; *Cartwright v. Maryland Ins. Group* (1995), 101 Ohio App.3d 439, 443-444, 655 N.E.2d 827, 829-830; *Finneran v. Bestor* (Nov. 2, 1995), Cuyahoga App. No. 68774, unreported, 1995 WL 643810; *Brocwell v. King* (Oct. 24, 1995), Richland App. No. 95-25, unreported, 1995 WL 768520, discretionary appeal not allowed (1996), 75 Ohio St.3d 1219, 665 N.E.2d 217.

**{¶ 22}** The case at bar affords us an opportunity to state in syllabus law what a majority of this court has announced indirectly through the combination of

---

2. We specifically note that our decision in this case involves no consideration on the merits of any issue that may arise due to the operation of statutory changes brought about by Am.Sub.S.B. No. 20. Cole v. Holland.

*Savoie's* third syllabus paragraph and the concurring opinions in *Hillman* and *Newman*.

{¶ 23} We hold that pursuant to former R.C. 3937.18, an underinsurance claim must be paid when the individual covered by an uninsured/underinsured policy suffers damages that exceed those monies available to be paid by the tortfeasor's liability carriers. In determining the amount of underinsurance coverage to be paid in a situation involving an accident governed by former R.C. 3937.18, the underinsurance provider is entitled to set off the amounts actually recovered from the tortfeasor's liability carriers against the insured's total damages, rather than against its policy limits.

{¶ 24} Our holding is made for much the same reason set forth by Chief Justice Moyer in his concurrence in *Hillman*, 68 Ohio St.3d at 239, 626 N.E.2d at 74, wherein he stated, "[*Savoie*] is the law on the issue in the above-styled case. As I believe all parties should receive equal application of the law announced by this court, *** I concur in the judgment entry." Since *Savoie* was decided in 1993, trial and appellate courts across this state have been deciding cases based upon that decision, as clarified by *Newman* and *Hillman* and their own independent reasoning reaching the same result. This is not the time to do a turnabout on the setoff question previously addressed and answered by this court. To do such an about-face would certainly not be in the best interests of justice or promote equal justice under the law. *Savoie* was an attempt to bring some stability and consistency to the state of automobile insurance law in Ohio. The General Assembly has responded to *Savoie*; we ourselves will not now undermine our own established precedent. The citizens of Ohio must have the ability to rely upon the holdings of this court.

{¶ 25} Given the interplay of *Savoie*, Am.Sub.S.B. No. 20, and this case on the setoff issue we decide today, we do not specifically overrule *James* and *In re*

*Nationwide*. However, to the extent they are inconsistent with the holding herein, those cases are disapproved.

{¶ 26} Applying our holding to the facts of this case, appellant may set off the amount appellees received from the tortfeasor's liability carrier against appellees' damages. The maximum underinsurance payment appellant is obligated to make to appellees is $100,000. The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

DOUGLAS, T. BRYANT, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., and COOK, J., dissent.

THOMAS F. BRYANT, J., of the Third Appellate District, sitting for WRIGHT, J.

————————————

**DOUGLAS, J., concurring.**

{¶ 27} I concur. I do so for three separate reasons.

{¶ 28} First, on the basis of *stare decisis*, about which we have heard much in the past, it is proper to support the law announced in *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809. This is especially so since courts all across this state have been relying on that decision to decide cases brought before them.

{¶ 29} Second, as I said in my concurrence in *Savoie*, a concurrence that appears to have been ignored in the ongoing *Savoie* debate, "we should recognize * * * that *un*insured-motorist cases are different from *under*insured-motorist cases; that multiple-claimant cases are different from single-claimant cases; that cases involving wrongful death are different from those where death is not involved; and that cases where there is a tortfeasor liability policy are different from those where there is no liability policy." *Id.* at 510, 620 N.E.2d at 816. In the case at bar, we have a *single* claimant, an insured tortfeasor, *under*insured motorist coverage, and the setoff question. While such a case appears to fit neatly into the statute, R.C.

3937.18, it now is apparent that this case cannot be decided in a vacuum while ignoring the impact of such a case on related cases with different fact patterns. All one need do to see the point clearly is review all the cases released today and decided on the authority of *Cole.*

{¶ 30} Third, and maybe most important, none of this can be fully decided until we hear and decide those issues concerning R.C. 3937.18 as amended by Am.Sub.S.B. No. 20, 145 Ohio Laws, Part I, 204, which issues are now pending before this court. This all may be unfortunate, but it is the best that can be done under existing circumstances.

{¶ 31} Accordingly, for the reasons stated, I concur.

_____

**COOK, J., dissenting**.

{¶ 32} I respectfully dissent because former R.C. 3937.18(A)(2) can be read just one simple way. "The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all *** insurance policies covering persons liable to the insured." This sentence, meant to delimit the amount of underinsurance coverage available to an injured party, never uses the word "damages." The word "limits" is used twice. Yet, the majority holds that this sentence allows the insurer to set off amounts recovered from the tortfeasor's insurer against the "insured's total damages" rather than against the "limits of such [underinsured motorist] coverage."

{¶ 33} Whatever the tortuous route the court took in *Savoie* and its progeny, this case just cannot be legitimately decided upon recent decisional law. To do so ignores clear statutory language.

{¶ 34} In *Savoie,* the court determined under what circumstances a tortfeasor is underinsured in multiple-claimant situations. Notwithstanding the language of *Savoie's* third syllabus, that case did not make a specific finding that

the provision authorizing the setoff against policy limits is ambiguous or unconstitutional. The setoff issue was not squarely presented to the *Savoie* court. Nowhere in that decision did the court engage in a supporting analysis that negated former R.C. 3937.18(A)(2)'s clear provision on setoffs. The *Savoie* court did not cite the relevant language of former R.C. 3937.18(A)(2), and the noun "setoff" appears nowhere in the *Savoie* opinion.

**{¶ 35}** Here the court had an opportunity to concede the point that, despite all the jigsawing to this area of the law and overlays applied in the more complex, multiple-claimant cases, the *statute itself* decides this uncomplicated case. I regret that it did not.

**{¶ 36}** I would reverse the judgment of the court of appeals.

MOYER, C.J., concurs in the foregoing dissenting opinion.

_____