OPINION
Defendant-appellant, The Midwestern Indemnity Co. [Midwestern], appeals the decision of the Common Pleas Court of Putnam County, Ohio, which granted summary judgment to Defendant-appellee, State Farm Mutual Automotive Insurance Company [State Farm]. The Plaintiff-appellant, Chad L. Laubenthal [Laubenthal], is Midwestern's insured.
On November 25, 1993, Laubenthal was the passenger in a car which struck a utility pole. As a result of the accident, he sustained serious personal injuries to his trachea and vocal cords. The driver of the vehicle was Amy L. Cramer [Cramer] and she was insured by State Farm. The State Farm Claims Office received notice of the accident on November 29, 1993. Settlement negotiations between State Farm and Laubenthal began in April, 1995, and were completed the following September. At that time, Laubenthal signed a settlement agreement with State Farm releasing Cramer from all further liability. In return, Laubenthal received the maximum sum on the liability policy issued by State Farm, amounting to $100,000.
On November 21, 1995, Laubenthal filed a complaint against his insurance carrier, Midwestern, seeking underinsured motorist coverage pursuant to its automobile and umbrella policies. The basis for Laubenthal's claim was that the amount received from State Farm's liability settlement was insufficient to pay the costs associated with injuries sustained in the car accident. In October, 1996, the complaint was amended to include a claim against State Farm. With this action, Laubenthal sought to obtain the benefits of the underinsured motorist coverage included in Cramer's policy.
In due course, State Farm filed a motion for summary judgment. On July 25, 1997, the trial court granted summary judgment in favor of State Farm, effectively removing from factfinder review the issue of State Farm's potential responsibility for underinsured policy coverage. Consequently, the issue of Midwestern's liability to Laubenthal went before a jury on September 2 and 3, 1997. A verdict was rendered in favor of Laubenthal, in the amount of $500,000. This represented the cost of the injuries resulting from the car accident. In a judgment entry dated October 8, 1997, the trial court adjusted Midwestern's liability to $400,000, reflecting Laubenthal's previous receipt of $100,000 from State Farm. Midwestern satisfied this judgment on October 30, 1997. Final judgment as to all parties was also entered in the October judgment entry.
Thereafter, Midwestern filed this appeal, asserting the following assignment of error:
 The trial court erred in applying R.C. 3937.18 as modified by Am.Sub.S.B. 20 to a claim for underinsured motorists coverage against State Farm; when the subject accident occurred on November 25, 1993, prior to the effective date of Am. Sub. S.B. 20, and State Farm controlled the timing of payment of both liability and underinsured motorists coverage, failed to settle the liability claim until after the effective date of Am.Sub.S.B. 20 and subsequently denied the underinsured claim on the grounds that the liability payment occurred after the effective date of Am.Sub.S.B. 20.
In other words, Midwestern maintains that the trial court erred in granting summary judgment to State Farm. Accordingly, because this matter is before this Court as a review of the trial court's granting of a summary judgment motion, we must apply the same consideration standard as that used by the trial court.Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127,129. Summary judgment will be granted when no genuine issues of material fact remain to be litigated and, after viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Moreover, summary judgment should be awarded with caution, with the trial court resolving doubts and construing evidence in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 360.
The statutory provision at issue in this matter is R.C.3937.18, which mandates that insurance companies offer uninsured and underinsured motorist coverage in their automobile policies. At the time of Laubenthal's accident, R.C. 3937.18(A)(2), which addressed underinsurance motorist coverage, mandated that insurance carriers provide:
 [u]nderinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.
Am.Sub.H.B. No. 1, 142 Ohio Laws, Part I, 1661, 1739-1740. The pertinent case law interpreting this statutory provision was set forth in Savoie v. Grange Mutual Ins. Co. (1993), 67 Ohio St.3d 500, paragraph three of the syllabus:
 An underinsurance claim must be paid when the individual covered by an uninsured/underinsured policy suffers damages that exceed those monies available to be paid by the tortfeasor's liability policy.
However, by the time State Farm initiated settlement procedures for Laubenthal's claim of the liability coverage, R.C.3937.18 had changed. Effective October 20, 1994, R.C. 3937.18
(A)(2) was amended to reflect the requirement that insurance carriers provide:
 (2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for insureds thereunder against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.
A review of the history of this modified statute reveals that the General Assembly intended to overrule the Savoie decision:
 Section 8: It is the intent of the General Assembly in amending division (A)(2) of section 3937.18 of the Revised Code to declare and confirm that the purpose and intent of the 114th General Assembly in enacting division (A)(2) of section 3937.18 in Am.H.B. 489 was, and the intent of the General Assembly in amending section 3937.18 of the Revised Code in this act is, to provide an offset against the limits of the underinsured motorist coverage of those amounts available for payment from the tortfeasor's bodily injury liability coverage.
Regardless of the change in law,[1] the Ohio Supreme Court's commitment to its initial interpretation of former R.C.3937.18 was restated in Cole v. Holland (1996), 76 Ohio St.3d 220, syllabus:
 Pursuant to former R.C. 3937.18, an underinsurance claim must be paid when the individual covered by an uninsured/ underinsured policy suffers damages that exceed those monies available to be paid by the tortfeasor's liability carriers. In determining the amount of underinsurance coverage to be paid on a claim involving an accident governed by former R.C. 3937.18, the underinsurance provider is entitled to set off the amounts actually recovered from the tortfeasor's liability carriers against the insured's total damages, rather than against its policy limits. (Savoie v. Grange Mut. Ins. Co. [1993], 67 Ohio St.3d 500, * * * paragraph three of the syllabus, applied and followed.)
As further elaboration, the Ohio Supreme Court stated that when the cause of action accrued prior to October 20, 1994, the law as stated in the Savoie case and the related statute were applicable rather than the terms of modified R.C. 3937.18. Cole, supra at 225. Thus, by implication, in those cases where the cause of action accrued subsequent to the adoption of the modified R.C.3937.18, the provisions of that legislation applied.
In this case, the determinative factor is the accrual date of Laubenthal's cause of action for the underinsurance coverage, thus establishing the controlling law regarding Laubenthal's recovery options. Specifically, Midwestern argues that Laubenthal's cause of action for his claim to the underinsured motorists coverage provided by State Farm accrued on the date of the car accident, thereby invoking application of the Savoie decision.
On the other hand, State Farm asserts that the cause of action accrued on the date Laubenthal settled his liability claim against State Farm. State Farm's argument is that, pursuant to language within the case of Kraley v. Vannewkirk (1994), 69 Ohio St.3d 627,632-634, underinsured motorist provisions are governed by contract principles, which are subject to satisfaction of conditions precedent prior to coverage. The terminology which State Farms presents as the condition precedent within its policy issued to Cramer is:
SECTION III- UNINSURED MOTOR VEHICLE-COVERAGE U
* * *
 THERE IS NO COVERAGE UNTIL THE LIMITS OF LIABILITY OF ALL BODILY INJURY LIABILITY BONDS AND POLICIES THAT APPLY HAVE BEEN USED UP BY PAYMENT OF JUDGMENTS OR SETTLEMENTS.
State Farm maintains that since the liability limits on its policy were exhausted after October 20, 1994, no obligation for coverage arose until that point and, accordingly, the law as set forth in the current version of R.C. 3937.18 applies. Moreover, State Farm contends that Laubenthal's claim for underinsured motorist coverage is unavailing due to the current statutory guidelines regarding insurance coverage setoffs. Applying the terms of the State Farm policy, because the liability coverage is also the maximum amount of coverage for potential underinsured motorists claims, after the two are setoff no additional monies are available.
Upon review, we conclude that Laubenthal's cause of action accrued at the time of the accident. In general, basic legal principles hold that a cause of action accrues at the time of the offending event. Such is the case in claims for promissory estoppel, breach of contract and fraud, Goodwin v. Ohio Dept. ofRehab. Corr. (1997), 86 Ohio Misc.2d 62, negligent investment advice, Avery B. Klein Co. v. Joslin (April 8, 1993), Cuyahoga App. No. 61841, unreported, and defamation, R.C. 2305.11(A). More specifically to the facts of this case, other courts have held that the cause of action for an underinsurance claim accrues at the time of the accident. See, e.g., Balatgek v. State Farm Ins.Co. (June 12, 1997), Franklin App. No. 96APE12-1619, unreported;Heritage Mut. Ins. Co. v. McBee (August 21, 1996), Summit C.A. No. 17440, unreported. Further, the Court in Kraley,69 Ohio St. 3d at 633, stated that "the cause of action for uninsured motorist coverage accrued on the same date that the injury occurred[.]"
Moreover, we also conclude that the language in the Kraley
decision on which State Farm relies is inapplicable to this case. That case addressed the issue of when the contractual limitations period began for a claim of uninsured motorist coverage:
 The validity of a contractual period of limitations governing a civil action brought pursuant to the contract is contingent upon the commencement of the limitations period on the date that the right of action arising from the contractual obligation arises.
Kraley, 69 Ohio St.3d at paragraph two of the syllabus. In other words, Kraley is not about when a cause of action is vested, but when a vested cause of action is maintainable.
Finally, contrary to the implication of State Farm's argument, the damages potentially due an injured plaintiff need not be established at the time the cause of action accrued. At the time of the incident, the right to pursue the cause of action is in place, as is the formula to determine the damages amount, although the numbers to utilize in that formula may be unknown at the time of the triggering event. Nonetheless, uncertainty as to the amount of the damages does not prevent recovery. 30 Ohio Jurisprudence 3d (1981) 25, Damages, Section 14. Instead, reasonable certainty of the damages potentially available, consistent with the nature of the case, is required. Id. The ability of damages to be readily ascertainable meets this standard.
Thus, in view of our conclusion that the cause of action accrual date for a claim to underinsured motorist coverage is the date of the accident, the applicable law to this matter is that set forth in the third syllabus paragraph Savoie, 67 Ohio St.3d 500, and the underinsurance statute in effect at the time of theSavoie decision. Cole, 76 Ohio St.3d at 225. Accordingly, no genuine issues of material fact exist in these circumstances and the trial court erred in granting summary judgment to State Farm. Midwestern's assignment of error is sustained and the judgment of the Court of Common Pleas of Putnam County is reversed and remanded to that court for proceedings consistent with this opinion.
Judgment reversed and remanded.
 EVANS and HADLEY, JJ., concur.
[1] R.C. 3937.18 was amended once again effective 9-3-97. However, the changes made at that time were minor and do not substantially alter the terms of the statutes at issue in this matter.