OPINION.
Defendant-appellant Commercial Union Insurance Company (CUIC) appeals from the judgment of the trial court declaring that plaintiff-appellee Jean Walters was entitled to underinsured-motorist benefits pursuant to a policy of insurance CUIC had issued to Walters. CUIC also argues that, even if it is liable for underinsured-motorist benefits, the trial court improperly calculated the amount of its liability. We find no error in the trial court's holding that CUIC is required to pay underinsured-motorist benefits; however, we do hold that the trial court erroneously calculated the threshold amount that Walters's damages must exceed to trigger underinsured-motorist coverage.
BACKGROUND
In November 1987, Jean Walters was severely injured in an automobile accident when a car driven by Andrew Clayton collided with the car in which Walters was a passenger. Another passenger, Susan Awalt, was killed in the same accident. Clayton was insured by Ohio Casualty Insurance Company and Amica Insurance Company. The Ohio Casualty liability policy provided $100,000-per-person coverage with a limit of $300,000 per accident. The Amica liability policy had a single liability limit of $300,000. Walters was insured by CUIC for underinsured-motorist benefits in the amounts of $250,000 per person and $500,000 per occurrence.
Walters, through her counsel, notified CUIC of the accident by letter dated December 11, 1987, indicating that the damages were "quite substantial" and would likely "meet or exceed the limits of all applicable coverage." The letter also requested that CUIC state its position on the availability of coverage under the terms of the underinsured-motorist policy.
Other insurers were potentially liable for payments to Walters and Awalt's estate, including State Farm, Awalt's underinsured-motorist carrier, and Buckeye Union Insurance Company, Walters's and Awalt's "Excess Uninsured Motorist Coverage" carrier.
By letter dated March 16, 1989, Walters's and Awalt's counsel informed all of the insurance carriers of the extent of Walters's severe and debilitating injuries, her medical expenses and lost pay, and her potential future damages, as well as the expected economic loss to Awalt's estate. In June 1989, counsel for Walters and Awalt filed suit against Ohio Casualty, Amica, State Farm and Buckeye. The record demonstrates that counsel for Walters and Awalt sent copies of correspondence concerning the litigation to CUIC.
On December 6, 1990, in response to correspondence from Walters's attorney, counsel for CUIC acknowledged that CUIC had been put on notice of a potential underinsured-motorist claim, and recounted the settlement negotiations of which CUIC was aware at that time. Specifically, CUIC knew that Ohio Casualty had offered Walters $100,000, the limit of liability under its policy. CUIC also knew that Amica had offered only $50,000 to Walters. Although there was no mention of the amount Amica had offered Awalt's estate, CUIC stated that "there is still $150,000 in excess coverage available [from] the tortfeasor, Andrew Clayton."
CUIC then recited the terms of the underinsured-motorist coverage it had provided Walters, stating that the "split limit coverage available to Ms. Walters for the underinsured motorist coverage is $250,000 per claim." Continuing, CUIC's counsel stated:
 It is my opinion that based on these facts, your client does not have an underinsured motorist claim against the Commercial Union Insurance Company at this time. This means that under the McDonald v. Republic-Franklin Insurance Company [(1989), 45 Ohio St.3d 27, 543 N.E.2d 456] case, you do not have to obtain the permission of Commercial Union Insurance Company to settle the claims.
 However, in the event that the Amica policy of insurance is exhausted, and your client has recovered less than $250,000, you may potentially have an underinsured motorist claim for which you must obtain the permission of the insurance company to settle or potentially violate the rights [sic] of the insured's policy.
 At the time of the correspondence between the parties, the controlling case for interpretation of underinsured-motorist policies was Hill v. Allstate Ins. Co. (1990), 50 Ohio St.3d 243, 533 N.E.2d 658. According to Hill, an insured was not entitled to underinsured-motorist benefits where the limits of liability in the insured's policy were identical to those in the tortfeasor's liability insurance coverage.
When the limits were different, the underinsured-motorist carrier was entitled to "apply payments made by or on behalf of an underinsured motorist as a setoff directly against the limits of its underinsured motorist coverage." See James v. Michigan Mut.Ins. Co. (1985), 18 Ohio St.3d 386, 481 N.E.2d 272, paragraph two of the syllabus. Thus, under Hill, if Walters had recovered $250,000 from the tortfeasor's insurance carriers, CUIC would have had no duty to pay underinsured-motorist benefits. Consequently, CUIC informed Walters as quoted above that she did not need CUIC's permission to settle her claims so long as she recovered at least $250,000.
On December 19, 1990, Walters informed CUIC that she had settled her claim with Clayton's insurers for $250,000. The letter stated Walters's counsel's belief that "this terminates any involvement which your company would have in this case pursuant to the terms of Ms. Walters' insurance policy."
SUPREME COURT'S SAVOIE DECISION
In 1993, the Supreme Court of Ohio issued the decision Savoie v.Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500, 620 N.E.2d 809. In Savoie, the court held that an insured had a claim for underinsured-motorist coverage whenever the insured's damages exceeded the limits of liability of the tortfeasor's insurance. See Savoie, paragraph three of the syllabus The amount that the insured received from the tortfeasor's insurers reduced, or was set off against, the insured's total damages. The insured would then be entitled to recover from the underinsured-motorist insurer the remaining amount of his or her damages, up to the limit of the underinsured-motorist policy. See Savoie, paragraph three of the syllabus; Cole v. Holland (1996), 76 Ohio St.3d 220,667 N.E.2d 353, syllabus (explaining paragraph three of the Savoie syllabus).
In Peerless Elec. Co. v. Bowers (1955), 164 Ohio St. 209, 210,129 N.E.2d 467, 468, the Supreme Court of Ohio set forth the following general rule concerning the retroactivity of its decisions: "The general rule is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law." Accordingly, the law as set forth in Savoie, rather than Hill, governs (and, pursuant to Peerless, has always governed) the parties' rights in this case.
When Clayton's insurance was insufficient to compensate Walters for her injuries, Walters was entitled to underinsured-motorist benefits from CUIC. After Savoie was issued, Walters filed a claim with CUIC for those benefits. CUIC claimed that Walters was not entitled to benefits because she had destroyed CUIC's subrogation rights by settling with Clayton and giving a release of claims in return. Because the insurance contract required Walters to protect CUIC's subrogation rights, and because Walters failed to obtain permission from CUIC to settle, CUIC claimed that it had no obligation to provide underinsured-motorist benefits.
Walters thereafter sued CUIC, and CUIC filed a counterclaim for a declaratory judgment that it was not obligated to pay underinsured-motorist benefits. The trial court held that Walters was entitled to underinsured-motorist benefits from CUIC to the extent that her damages exceeded $312,500 and that CUIC's maximum liability was $250,000. The trial court certified the judgment pursuant to Civ.R. 54(B), and CUIC has appealed the decision to this court.
CUIC'S FIRST ASSIGNMENT OF ERROR
CUIC claims that the trial court's judgment is erroneous for two reasons: first, because Walters did not preserve CUIC's subrogation rights by notifying CUIC of the settlement and obtaining permission to settle or giving CUIC an opportunity to protect its own rights; and second, because CUIC did not waive the requirement that Walters obtain its permission to settle.
The trial court did not set forth its particular reasons for rejecting CUIC's argument that Walters was not entitled to benefits. Reviewing the pleadings of the parties and the applicable law, we conclude that the trial court's decision was based on one or both of the following theories: (a) Walters did in fact notify CUIC of the settlement and give CUIC a chance to protect its subrogation rights, but CUIC failed to do so, or (b) CUIC waived the notice and permission requirement.
A trial court's judgment is based upon sufficient evidence where the record contains some competent evidence to sustain the findings of the trial court. See Cole v. Complete Auto Transit,Inc. (1997), 119 Ohio App.3d 771, 777, 696 N.E.2d 289, 293. When a trial court's judgment is supported by some competent, credible evidence going to all the essential elements of the case, a reviewing court will not reverse that decision as being against the manifest of the evidence. See Shear v. West American Ins. Co.
(1984), 11 Ohio St.3d 162, 164, 464 N.E.2d 545, 547; C.E. MorrisCo. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 280,376 N.E.2d 578, 579. Whether the case is "civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." See Cole,supra; State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
We hold that the trial court's decision is supported by competent, credible evidence. The correspondence between the parties shows that Walters notified CUIC early and often of her potential claim. In December 1987, Walters put CUIC on notice of the accident and the tortfeasor's insurance policies, and informed CUIC that her damages would likely exceed the limits of all applicable insurance. In June 1989, Walters informed CUIC of the lawsuit filed against the tortfeasor's insurance companies. CUIC was aware of the settlement negotiations that occurred, as evinced in its December 1990 letter to Walter's counsel.
An insured's duty to protect its insurer's subrogation rights requires the insured to notify the carrier of a tentative settlement, giving the carrier a reasonable opportunity to protect its subrogation rights; if the carrier does not take reasonable steps to protect its subrogation rights, the failure to obtain the carrier's release prior to settlement is not a bar to underinsured-motorist benefits. See McDonald v. Republic FranklinIns. Co. (1989), 45 Ohio St.3d 27, 543 N.E.2d 456, paragraph two of the syllabus. CUIC specifically referred to the McDonald case in its 1990 letter to Walters's counsel, so it was well aware of its duty to act reasonably to protect its own subrogation rights should the amount available to compensate Walters be insufficient.
Based on the evidence in the record, we hold that the trial court did not err in holding that Walters's failure to obtain CUIC's consent to settle her claims against Clayton did not bar her claim for underinsured-motorist benefits. Walters notified CUIC of the proposed settlements, giving CUIC an opportunity to protect its subrogation rights. Likewise, we hold that the record supports the finding that CUIC specifically waived the consent requirement.
In its December 1990 letter, CUIC informed Walters that she did not need CUIC's permission to settle unless the settlement was less than $250,000. At the time, CUIC was relying on the law as stated in Hill v. Allstate Ins. Co., and believed that it had no liability for underinsured benefits unless Walters's recovery from the tortfeasor's available insurance was less than CUIC's limit of liability: $250,000. The letter supports the trial court's conclusion that CUIC waived any notice or consent requirement for settlement if the amount of the settlement were for $250,000 or more. Since Walters settled her case for $250,000 from Clayton's insurers, she did not need CUIC's permission and therefore did not unjustifiably destroy CUIC's subrogation rights.
CUIC understandably relied upon Hill in determining how to treat Walters's claim for underinsured-motorist benefits. The announcement of Savoie and the effect of the Peerless doctrine have caused many an insured and insurer to wish past actions undone. See, e.g., Williams v. Great Amer. Ins. Co. (Jan. 24, 1996), Hamilton App. No. C-940644, unreported; Sutton v. StateFarm Ins. Co. (Feb. 9, 1996), Montgomery App. No. 15353, unreported. Nevertheless, Walters is entitled to underinsured-motorist benefits if her damages exceed the amount of liability coverage available from the tortfeasor's insurance. As the Supreme Court of Ohio has stated:
 The purpose of underinsured motorist coverage is to provide adequate compensation to individuals injured by tortfeasors who carry insufficient insurance coverage. Where one is injured by such an underinsured tortfeasor, the injured party should be entitled to recover from the tortfeasor and receive additional compensation from his own underinsurance provider. * * * Where the tortfeasor's insurer offers the limits of its policy, the injured party should be able to recover that amount and still seek underinsured motorist benefits to the extent the offer is inadequate compensation for his injuries.
 See McDonald, 45 Ohio St.3d at 30, 543 N.E.2d at 459. Walters's recovery in this case is completely consistent with the purpose of underinsured-motorist coverage as stated in McDonald, Savoie, and Cole. The trial court's declaration that Walters is not barred from recovering underinsured-motorist benefits is supported by competent evidence in the record and is also supported by the applicable law.
For the foregoing reasons, CUIC's first assignment of error is overruled.
CUIC'S SECOND ASSIGNMENT OF ERROR
CUIC also claims that, even if it is liable for underinsured-motorist benefits, the trial court incorrectly determined the threshold amount that Walters's damages have to exceed to trigger her right to underinsured benefits. We agree.
The trial court held that Walters was entitled to recover underinsured benefits from CUIC to the extent that her damages exceeded $312,500. Walters actually received $250,000 from Clayton's insurers, and she received $62,500 pursuant to a policy that Walters herself had purchased from Buckeye Union Insurance Company. The settlements between Awalt, Walters, Ohio Casualty and Amica resulted in payments to Awalt and Walters of $450,000 out of an available $500,000. CUIC contends that the $50,000 that Walters left "on the table" when she settled her claims should offset her damages for the purposes of underinsured-motorist benefits. Because underinsured-motorist coverage is available only when the insured's damages exceed the limit of the tortfeasor's liability coverage, we agree that the unclaimed $50,000 must be added to the amount with which Walters is to be credited as receiving in payment for her injuries.
However, as Walters points out, her damages should be reduced only by those amounts paid by the tortfeasor's insurance. SeeCole v. Holland (1996), 76 Ohio St.3d 220, 225, 667 N.E.2d 353,357. Of the amount Walters received, $62,500 was from a policy that she purchased herself, and should not have been included in the amount credited for the purposes of determining underinsured-motorist coverage.
Therefore, the trial court's judgment is modified to the extent that the court held that CUIC is liable for damages sustained by Walters that exceed $312,500; CUIC is liable for damages sustained by Walters to the extent that her damages exceed $300,000, representing the $250,000 she actually received from the tortfeasor's insurers and the $50,000 that she failed to, but could have, recovered.
Judgment affirmed as modified.
Doan, P.J., and Painter, J., concur.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Opinion.