OPINION. *Page 3 
{¶ 1} Defendant-appellants Nationwide Mutual Insurance Company, Nationwide Property and Casualty Insurance Company, and Nationwide Mutual Fire Insurance Company (collectively "Nationwide") appeal the decision of the trial court denying their motion for summary judgment relating to underinsured-motorist coverage and ordering it to pay the policy limits to each claimant in this wrongful-death case.
 Rainstorm and Flooding Lead to Tragic Death {¶ 2} Monica Kuchmar was a passenger in a vehicle being driven by defendant Brian Peters on a stormy day in July 2001. Peters drove the vehicle into high water that had accumulated on East Kemper Road. The car began to fill with water and the two attempted to escape. Monica was swept away by the current and drowned.
 {¶ 3} The vehicle that Peters was driving was entrusted to him by the daughter of defendant Thomas Hayman. Hayman carried automobile liability insurance in the amount of $300,000 through the United States Automobile Association. He also maintained an umbrella policy in the amount of $1 million through USAA.
 {¶ 4} Monica was a minor at the time of her death. She lived at home with her parents and two sisters. The Kuchmars were covered by an automobile insurance policy issued by Nationwide that contained $300,000 per occurrence in underinsured-motorist coverage. The family was also covered by an umbrella policy *Page 4 
issued by Nationwide in the amount of $1 million per occurrence. The Kuchmars were also covered by a homeowners insurance policy.
 {¶ 5} Monica's estate sued Peters, Hayman, and others for negligence and wrongful death. Monica's parents and sisters sued in their individual capacities under the wrongful-death statute.[1] The Kuchmars also sued Nationwide, claiming that they were entitled to payment under the Nationwide policies. USAA settled the claims against Peters and Hayman for $150,000 less than the combined $1.3 million policy limit of the two insurance policies at issue here.
 {¶ 6} Nationwide filed a motion for summary judgment, arguing that Peters was not an underinsured motorist because the policy limits of the available liability policies were not less than the available underinsured-motorist coverage under its policies. The Kuchmars argued that, pursuant to Clark v. Scarpelli[2] and Littrell v.Wigglesworth[3], the determination of who was underinsured was not made by comparing policy limits. They contended that since each heir did not receive an amount equivalent to what he or she would have received if there was only one heir, Nationwide owed coverage. From this, they concluded that each of the Kuchmars would have been entitled to the difference between the amount they actually received and the $1.3 million policy limit.
 {¶ 7} In its decision, the trial court agreed with the Kuchmars. The trial court reasoned that "the amount `available for payment' * * * to each of the Kuchmar Plaintiffs from the insurance coverage applicable to the vehicle operated by Defendant Peters * * * is less than the amount of underinsured coverage available to *Page 5 
each of the Kuchmar plaintiffs under the Nationwide policy by virtue of the fact that the claims of these multiple claimants * * * resulted in a reduction of the amount available for payment to each of the Kuchmar insureds below the underinsured motorists limits." The court concluded that "each of the Kuchmar Plaintiffs herein is entitled to receive in underinsured motorist's benefits * * * the difference between the amount recovered by each Plaintiff * * * and the amount available to each Plaintiff in underinsured motorist's benefits from Nationwide."
 {¶ 8} The trial court concluded that the Nationwide homeowner's policy did not apply. That portion of the decision has not been contested by the parties on appeal.
 {¶ 9} In its first assignment of error, Nationwide contends that the trial court erred when it denied its motion for summary judgment. After a review of the applicable law, we agree — in part.
 Underinsured Motorists Determinations Prior to Webb v. McCarty — Clark and Littrell {¶ 10} We begin by noting that the original purpose of underinsured-motorist coverage was "to ensure that persons injured by an underinsured motorist would receive at least the same amount of total compensation as they would have received had they been injured by an uninsured motorist."[4] In Clark, the Ohio Supreme Court emphasized that underinsured-motorist coverage was not intended to be excess insurance to the tortfeasor's liability coverage.[5] More importantly, the court stressed *Page 6 
that a person injured by an underinsured motorist should never be afforded greater coverage than that which would have been available had the tortfeasor been uninsured.[6]
 {¶ 11} Shortly after the court issued its decision in Clark, it was given the opportunity to apply its reasoning in Littrell v.Wigglesworth. In Littrell, five individuals were injured or killed in an automobile accident. The tortfeasor had $1.3 million in available liability coverage.[7] The liability limits were paid and divided among the five injured parties in differing amounts. These individuals were also all insured by a policy issued by Westfield, which provided underinsured-motorist coverage with a single policy limit of $500,000 per accident.
 {¶ 12} The Littrell court held that Westfield owed no coverage. The court reasoned that "[h]ad the tortfeasor been an uninsured motorist, the maximum amount available to the five occupants of the Pratt minivan would have been $500,000. The amount available for payment from the tortfeasor was $1,300,000, which was paid to the claimants herein. As this amount exceeds the amount available from the Westfield policy, the occupants of the Pratt minivan are not entitled to underinsured motorist benefits from Westfield."[8]
 {¶ 13} Under the argument advanced by the Kuchmars, each of them would be entitled to a total of $1.3 million in coverage. If that position prevailed, Nationwide would owe coverage of $5.2 million from policies that had a combined per-occurrence limit of $1.3 million. Had Peters been uninsured, the most that the Kuchmars would have been entitled to receive from Nationwide would have been *Page 7 
$1.3 million. The Kuchmars' argument would convert the Nationwide policies into excess coverage, would convert the per-occurrence limit to a per-person limit, and would clearly place them in a better position than if Peters had been uninsured.
 The Effect of Webb v. McCarty {¶ 14} Having determined that the Kuchmars are not each entitled to $1.3 million in compensation, we are left with the issue of the amount of Nationwide's setoff. As noted, for reasons not clear in the record, USAA settled with the Kuchmars for less than its policy limits. The question becomes whether Nationwide is entitled to set off the USAA policy limits or the amount actually received by the Kuchmars.
 {¶ 15} Had this case been decided on August 28 of this year, the result would have been different. In a footnote, the Littrell court pointed out that "[t]his case illustrates well themultiple-policies issue. If each of the five occupants of the Pratt minivan had had a separate policy of insurance, then each would have had coverage under his or her own policy up to the single policy limit less any sums received from the tortfeasor's policy."[9] The court also noted that "it would appear that, in most cases, the application of the R.C. 3937.18(A)(2) `amounts available for payment' language arises whenboth multiple parties and multiple policies are involved."[10] Thus, it would seem that when all the insureds are claiming under thesame underinsured-motorist policy, the issue does not arise.
 {¶ 16} Under such a scenario, it would appear that simply comparing the limits would remain appropriate. After all, even if the liability carrier paid out less than its policy limits, that would not mean that the full policy limits were not *Page 8 
"available for payment" to the injured parties. The choice of the injured parties to take less than the policy limits from the party who actually caused the injury was entirely theirs.
 {¶ 17} On August 29, 2007, however, the Ohio Supreme Court releasedWebb v. McCarty.[11] In that case, the court stated that "[w]e have rejected this argument, that a limits-to-limits comparison controls, in situations involving multiple claimants. Today we reject it again, summarily, on the authority of Littrell. * * * The [Littrell] opinion made it clear that, in a case involving multiple claimants, UM coverage would be compared to the amount paid under an automobile liability policy, not to the limit of the automobile liability policy."[12]
Thus, in the guise of affirming Clark and Littrell, the court expanded those holdings by changing the focus from multiple claimantsand multiple policies to simply multiple claimants.
 {¶ 18} The facts in Webb confirm this reading. Webb and his wife were involved in an accident caused by McCarty. Webb was injured and his wife was killed. McCarty carried liability insurance in the amount of $300,000 per occurrence. The liability carrier settled the personal-injury claim with Webb for $25,000 and settled its claim with the estate for $269,836. The court indicated that the record was unclear as to why only that amount was paid.[13]
 {¶ 19} The issue was "whether Webb, his children, or others have a claim to underinsured-motorists ("UM") coverage under Webb's insurancepolicy, which had a $100,000-per-person limit and a $300,000-per-accident limit."[14] The court concluded that "the amount available for payment," pursuant to Littrell, was the *Page 9 
$269,836 actually paid.[15] The court concluded that "Webb and other claimants under his policy are underinsured to the extent that his UM policy's per-accident limit, $300,000, exceeds the amount available for payment."[16] Thus, the court in Webb concluded that the amount set off for purposes of underinsured-motorist coverage, even when all claimants are insured under the same policy, is the amount actually paid by the liability carrier.
 {¶ 20} Nationwide argues that "the full $1,300,000 liability limits was [sic] available to the Kuchmars, and Nationwide is entitled to `set-off that amount, not the amount settled for." We would like to agree, but we must concur with the Kuchmars when they argue that "there is absolutely no support in Webb" for that conclusion.
 {¶ 21} And the decision from the Tenth Appellate District, which was affirmed by Webb, confirms this reading. That court rejected the argument that the amounts actually recovered by the claimants inLittrell were unimportant.[17] The court reasoned that "the fallacy with appellee's argument is that in those cases, the amounts actually recovered were equal to the amounts of the policy limits. To say that the amount actually recovered was immaterial, or irrelevant to the court, is to take the review of those policies out of context, and ignore the rest of the Littrell opinion."[18]
 {¶ 22} The court was not unsympathetic to that argument, however. "Appellee's arguments, and Justice Cook's dissent, relating to a limits-to-limits comparison would appear to lead to a correct determination of whether or not *Page 10 
UM/UIM coverage is available under the law as enacted by the General Assembly. However, such is not the law under Littrell."[19]
 {¶ 23} For these reasons, we are compelled by Webb to conclude that Nationwide owes the Kuchmars underinsured-motorist coverage and that the amount of available coverage is the difference between its underinsured limits and the amount actually paid by USAA. Therefore, Nationwide's total exposure in this case is $150,000.
 The Issue of Damages Remains {¶ 24} Having determined that Nationwide owes coverage to the Kuchmars in the amount of $150,000, we address Nationwide's second assignment of error. In it, the carrier argues that it was improper for the trial court to hold that Nationwide was required to pay its policy limits without an actual determination of damages. We agree.
 {¶ 25} The issue of the amount of damages the Kuchmars suffered in this case was not addressed in the summary-judgment motion. Nonetheless, the trial court's decision not only determined that insurance coverage was owed, but also decided that the policy limits must be paid. To show entitlement to payment, the Kuchmars have to prove the amount of their losses. They have not done so, and the trial court incorrectly ordered payment of the policy limits.
 {¶ 26} The Kuchmars argue that Nationwide somehow waived the right to dispute the amount of damages because "[a]ppellants elected to file this [a]ppeal rather than request a [t]rial on damages before the [t]rial [c]ourt." We cannot agree. The trial court's decision awarded damages by ordering Nationwide to pay "the *Page 11 
difference between the amount recovered by each Plaintiff in each Plaintiffs settlement with Defendant Peters, only, and the amount available to each Plaintiff in underinsured motorist's benefits from `Nationwide.'" At that point, the issue of damages was decided, and Nationwide's remedy was to appeal.
 Conclusion {¶ 27} For the foregoing reasons, the first assignment of error is sustained in part and the second assignment of error is sustained entirely. Pursuant to Webb v. McCarty, Nationwide's maximum underinsured-motorist-coverage obligation is the difference between its $1.3 million policy limits and the amount actually paid to the Kuchmars by USAA. In this case, that maximum coverage amount is $150,000. The actual amount that Nationwide will be required to pay in this case will be decided once the Kuchmars have established their damages in a trial.
 {¶ 28} Accordingly, we reverse the judgment of the trial court and remand this case for further proceedings consistent with this decision.
Judgment reversed and cause remanded.
HENDON, P.J., and CUNNINGHAM, J., concur.
[1] R.C. 2125.01 et seq.
[2] 91 Ohio St.3d 271, 2001-Ohio-39, 744 N.E.2d 719.
[3] 91 Ohio St.3d 425, 2001-Ohio-87, 746 N.E.2d 1077.
[4] Littrell, 91 Ohio St.3d at 430, 2001-Ohio-87, 746 N.E.2d 1077, citing Clark, 91 Ohio St.3d at 275, 744 N.E.2d 719, citing James v.Michigan Mut. Ins. Co. (1985), 18 Ohio St.3d 386, 389, 481 N.E.2d 272, disapproved on other grounds in Cole v. Holland (1996),76 Ohio St.3d 220, 667 N.E.2d 353.
[5] Clark, 91 Ohio St.3d at 276, 744 N.E.2d 719.
[6] Id.
[7] Littrell at 431, 2001-Ohio-87, 746 N.E.2d 1077.
[8] Id.
[9] Id. at fn. 7 (emphasis sic).
[10] Id. at fn. 6 (emphasis sic).
[11] 114 Ohio St.3d 292, 2007-Ohio-4162, 871 N.E.2d 1164.
[12] Id. at ¶¶ 2, 4 (citations omitted).
[13] Id. at ¶ 2.
[14] Id. at ¶ 2 (emphasis added).
[15] Id. at ¶ 5.
[16] Id. (emphasis added).
[17] Webb v. McCarty, 10th Dist. No. 05AP-698, 2006-Ohio-795, ¶26.
[18] Id.
[19] Id. at ¶ 25. *Page 1