KUHNER et al., Appellees and Cross–Appellants,

v.

ERIE INSURANCE COMPANY, Appellant and Cross–Appellee.

[Cite as *Kuhner v. Erie Ins. Co.* (1994), 98 Ohio App.3d 692.]

Court of Appeals of Ohio,
Franklin County.

No. 94APE03–299.

Decided Nov. 3, 1994.

*DeLibera, Lyons & Bibbo* and *Jeffrey R. Bibbo,* for appellees and cross-appellants.

*John C. Nemeth & Associates* and *David A. Caborn,* for appellant and cross-appellee.

---

WHITESIDE, Presiding Judge.

Defendant, Erie Insurance Company ("Erie"), appeals from a judgment of the Franklin County Court of Common Pleas and raises two assignments of error, as follows:

"I.   The trial court erred in finding that the two-year limitation in which to initiate an underinsured motorist claim contained in the policy issued by Erie Insurance Company to Wanda and Earl Kuhner is ambiguous, and determining that plaintiffs-appellees are entitled to recover underinsured motorist benefits.

"II.   The trial court erred in finding that plaintiffs-appellees were entitled to recover underinsured motorist benefits, as Earl and Wanda Kuhner failed to exhaust the tortfeasors' insurance policies as a matter of law."

Plaintiffs, Wanda and Earl Kuhner, have also appealed from the judgment of the Franklin County Court of Common Pleas and raise two assignments of error, as follows:

"1. The trial court erred in finding that the underinsured motorist benefits which plaintiffs-appellees were entitled to recover were subject to a set-off of $75,000.00."

"2. The trial court erred in finding that any set-off which defendant-appellant is entitled should not be reduced by the reasonable costs of litigation."

Plaintiffs brought this action in the trial court seeking a declaratory judgment with respect to the underinsured motorist coverage of a policy of insurance issued to them by defendant, Erie Insurance Company. Defendant filed a counterclaim seeking a declaratory judgment that plaintiffs were not entitled to underinsured motorist coverage, including a declaration that plaintiffs had failed to exhaust the liability limits of the tortfeasor's insurance policies.

The policy contained an uninsured/underinsured motorist coverage provision in the amount of $100,000 per person and $300,000 per accident. The tortfeasor who caused the accident maintained insurance with a $50,000 liability-coverage limit. Plaintiff Wanda Kuhner's injuries caused her condition to deteriorate over a period of time, with continuing medical expenses which totalled less than $1,500 by the end of 1987 but had grown to more than $7,500 by the end of 1990. Her condition continued to deteriorate, and she was diagnosed in 1991 as having a recurrent post-traumatic stress disorder that rendered her incapable of regular employment. Accordingly, on December 11, 1991, plaintiffs sought the consent of Erie Insurance Company to accept $48,500 offered by the tortfeasors' insurers in settlement of that claim but preserving the underinsured claim with defendant insurer.

Defendant responded by a letter dated December 13, 1991, including the statement that: "We regret that we can neither give you permission nor deny permission to accept the settlement offer." In the next paragraph, Erie asserted that the claim was barred by a provision of the policy requiring legal actions to recover under underinsured motorist coverage to be commenced within two years from the date of accident and further stated: "This loss occurred in 1987 and this is the first notification that there was a potential for underinsured motorists claim." As a result of this letter, plaintiffs accepted the tortfeasors' offers and settled. However, plaintiffs' action sought recovery against two tortfeasors. The $48,500 accepted in settlement of the claims included $33,500 from the insurer of the driver of the other vehicle directly involved in the accident and $15,000 from the insurer of a person who, although not directly involved in the accident, allegedly caused the accident. Such person had a policy limit of $25,000 liability coverage, making the total liability limits of the two policies of the alleged

tortfeasors $75,000. Thus, defendant Erie asserted two bases for denying any available coverage: (1) failure of plaintiffs to initiate an action against Erie within two years from the date of the accident; and (2) failure of plaintiffs to exhaust the limits of the liability policies issued to the two tortfeasors named defendants in the underlying suit.

The trial court found for plaintiffs upon these issues. Since the language of the Erie policy is ambiguous, the trial court construed it in favor of plaintiffs and concluded that the two-year limitation is a time in which an action must be commenced against the tortfeasor, rather than against the insurance company, citing *Heil v. United Ohio Ins. Co.* (1990), 66 Ohio App.3d 307, 584 N.E.2d 19. The trial court similarly rejected Erie's contention that arbitration should have commenced within two years from the date of the accident, since any right of plaintiffs to recover under the underinsured motorist provision did not accrue until Erie denied coverage on December 13, 1991. The trial court also found that there had been sufficient exhaustion of the underlying policies, but included a $75,000 setoff against the underinsured motorist benefits due plaintiffs from Erie, less reasonable cost of litigation.

■ The uninsured/underinsured motorist coverage of the policy provides in part:

"We will pay damages that the law entitles you or your legal representative to recover from the driver or owner of an uninsured motor vehicle. * * *

"We will not be bound by a judgment against the uninsured or the underinsured on the issues of liability or amount of damages unless it is obtained with our written consent.

" * * *

"We will pay no more than the limit(s) shown on the Declarations for one auto. * * *

" * * *

"The limits of protection available under this Uninsured/Underinsured Motorist Coverage will be reduced by:

"(1) the amounts paid by or for those liable for bodily injury to any one we protect.

"(2) the amount of any Liability Protection paid or payable to anyone we protect.

" * * *

"When the accident involves underinsured motor vehicles, we will not pay until all other forms of insurance applicable at the time of the accident have been exhausted by payment of their limits.  * * *

" * * *

"Disagreement over the legal right to recover damages or the amount of damages shall be settled by arbitration.  Arbitration must be initiated within two years from the date of the accident.

" * * *                 .

"If claimants or their representatives bring action for damages, copies of suit papers must be sent to us at once.

"In an action against us, we may require anyone we protect to join as party defendants those we allege to be liable.

"Legal action to recover under Uninsured/Underinsured Motorists Coverage must be initiated within 2 years from the date of the accident.  * * * "

There is a clear inconsistency in the policy provisions with respect to underinsured motorist coverage.  One clause provides that the insurer (Erie) will not be required to pay any amount under underinsured motorist coverage until all other insurance applicable has been exhausted by payment of the policy limits.  As the Supreme Court held in the second paragraph of the syllabus of *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521 N.E.2d 447:

"An injured insured satisfies the 'exhaustion' requirement in the underinsured motorist provision of his insurance policy when he receives from the underinsured tortfeasor's insurance carrier a commitment to pay an amount in settlement with the injured party retaining the right to proceed against his underinsured motorist insurance carrier only for those amounts in excess of the tortfeasor's policy limits."

In *Bogan*, the insureds settled the case against the tortfeasors for approximately eighty-four percent of the policy limits.  Here, plaintiffs settled their claim against one tortfeasor for approximately sixty-seven percent of the policy limit and against the other tortfeasor (whose vehicle apparently was not involved in the accident) for sixty percent of policy limits.

Erie relies upon *Motorists Mut. Ins. Cos. v. Grischkan* (1993), 86 Ohio App.3d 148, 620 N.E.2d 190.  In *Grischkan*, the court of appeals refused to follow the holding in *Bogan*, but, instead, "distinguished" it because the settlement was for $25,000 less than was available, and, thus, much greater than the $4,000 differential involved in *Bogan*, even though the settlement figure represented seventy-five percent of the policy limits.  The *Grischkan* court also attempted to

distinguish *McDonald v. Republic–Franklin Ins. Co.* (1989), 45 Ohio St.3d 27, 543 N.E.2d 456, the second paragraph of the syllabus of which holds:

"When an insured has given his underinsurance carrier notice of a tentative settlement prior to release, and the insurer has had a reasonable opportunity to protect its subrogation rights by paying the underinsured motorist benefits before the release but does not do so, the release will not preclude recovery of underinsurance benefits. (*Bogan v. Progressive Cas. Ins. Co.* [1988], 36 Ohio St.3d 22, 521 N.E.2d 447, modified and explained.)"

In doing so, the *Grischkan* court reasoned that the insurer in that case based its denial of underinsured motorist coverage at least in part upon the contention that the insured's injury was not worth an amount in excess of the tortfeasor's policy limits. That is not the case here. We cannot distinguish *McDonald, supra*, in similar fashion, since notice of proposed settlement was timely given, and Erie chose not to protect its interest by paying the underinsured motorist benefits prior to release. Accordingly, under the rule of *McDonald*, failure to exhaust underinsured benefits cannot preclude underinsured motorist coverage under the circumstances herein.

■ There remains the issue of whether the assertion of the underinsured motorist claim is time-barred by the two-year limitation of the policy commencing with the date of the accident. Erie has relied upon *Colvin v. Globe Am. Cas. Co.* (1982), 69 Ohio St.2d 293, 23 O.O.3d 281, 432 N.E.2d 167, which would support Erie's position. However, subsequent to the filing of Erie's brief herein, the Supreme Court overruled *Colvin* by *Miller v. Progressive Cas. Ins. Co.* (1994), 69 Ohio St.3d 619, 635 N.E.2d 317, holding that a policy provision precluding coverage unless the insured has either demanded arbitration or commenced a suit within one year from the date of accident is void as against public policy. Nevertheless, Erie points to some language in the opinion in *Miller* at 624, 635 N.E.2d at 321, which states:

"Finally, we do not suggest that time-limitation provisions of the type at issue in this case are altogether prohibited. Consistent with our analysis, a *two-year* period, such as that provided for bodily injury actions in R.C. 2305.10, would be a reasonable and appropriate period of time for an insured who has suffered bodily injuries to commence an action or proceeding for payment of benefits under the uninsured or underinsured motorist provisions of an insurance policy." (Emphasis *sic.*)

Although that comment does suggest that a two-year limitation would be appropriate, it does not suggest when the two years should commence with respect to underinsured motorist coverage. As pointed out above, the Erie policy expressly provides that:

"When the accident involves underinsured motor vehicles, we will not pay until all other forms of insurance applicable at the time of the accident have been exhausted by payment of their limits. * * * "

This suggests that there is no obligation of Erie under the underinsured motorist coverage until all other insurance is exhausted. Since R.C. 2305.10 provides for two years in which to commence the action against the tortfeasor, it is unrealistic to assume that that action would be concluded within a very short period after commencement of the action; therefore, very little, if any, time to exhaust policy limits will be afforded for commencing an action or arbitration proceedings subsequent to exhaustion of the tortfeasor's policy limits. Rather, it is unlikely that the limits of the other polices will be exhausted within two years of the accident. That was the situation in this case, the two-year period having expired prior to exhaustion of the tortfeasor's policy limits so that, as noted in the opinion in *Miller*, as to the result of a one-year limitation with respect to uninsured motorist coverage, "as a practical matter, the effect of the policy provision was to deprive the appellants of the coverage required by R.C. 3937.18."

Furthermore, in a case decided the same day as *Miller*, the Supreme Court held in paragraphs two and four of the syllabus with respect to uninsured motorist insurance in *Kraly v. Vannewkirk* (1994), 69 Ohio St.3d 627, 635 N.E.2d 323:

"2. The validity of a contractual period of limitations governing a civil action brought pursuant to the contract is contingent upon the commencement of the limitations period on the date that the right of action arising from the contractual obligation accrues.

" * * *

"4. A provision in a contract of insurance which purports to extinguish a claim for uninsured motorist coverage by establishing a limitations period which expires before or shortly after the accrual of a right of action for such coverage is *per se* unreasonable and violative of the public policy of the state of Ohio as embodied in R.C. 3937.18. * * * "

Under the policy provision, an insured's rights to payment by Erie for underinsured motorist coverage does not accrue until the tortfeasor's policy limits are exhausted. Under the rule of the second paragraph of the syllabus of *Kraly, supra*, the two-year limitation created by the policy cannot commence prior to that time. Accordingly, that limitation period cannot preclude the instant action, which was commenced within two years of the exhaustion of the other policies.

For these reasons, we find that the trial court did not err in finding plaintiffs' claims not to be barred by the two-year limitation of the policy. Neither Erie's first nor second assignment of error is well taken.

■ Turning to the two assignments of error raised by plaintiffs, the contention is that the trial court erred in finding defendant entitled to a setoff of $75,000. Although the trial court referred to "setoff," it is unclear as to the intent of the trial court with respect thereto. Plaintiffs and Erie both construe the setoff as being against the policy limits of Erie's policy with respect to underinsured motorist coverage. This may well be what the trial court intended, but the judgment itself does not so indicate. Rather, the import of the judgment is that the setoff is against the total amount of damages to which plaintiffs are entitled as a result of the automobile accident which is the subject of this action. Such a conclusion is consistent with the recent Supreme Court decision in *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809. Erie continues to contend that the setoff should be from the $100,000 limits of liability, relying upon the provision of R.C. 3937.18(A)(2) and an earlier Supreme Court decision in *Motorists Mut. Ins. Co. v. Andrews* (1992), 65 Ohio St.3d 362, 366, 604 N.E.2d 142, 146, which states:

" * * * Reading this statute, in conjunction with the public policy behind its adoption, the inescapable conclusion is that, when determining whether a motorist is underinsured, the *amount actually available for payment* under the tortfeasor's policy must be compared with the insured's underinsured motorist coverage limits. If the amount *available for payment* is less than the insured's underinsured policy limits, then the insured is entitled to underinsured motorist coverage. * * * " (Emphasis *sic.*)

*Andrews,* however, does not support Erie's contention, nor is it inconsistent with *Savoie, supra,* which holds in the third paragraph of the syllabus:

"An underinsurance claim must be paid when the individual covered by an uninsured/underinsured policy suffers damages that exceed those monies available to be paid by the tortfeasor's liability carriers. (*Hill v. Allstate Ins. Co.* [1990], 50 Ohio St.3d 243, 553 N.E.2d 658, overruled.)"

Any doubt as to the meaning of this paragraph of the syllabus is dispelled by the discussion of *Savoie,* which states, at 508, 620 N.E.2d at 815:

"In order to arrive at the proper conclusion in this case, it is critical to review the purpose of R.C. 3937.18, which explains how monies received from a tortfeasor's liability insurer reduce, or do not reduce, the limits of an underinsurance policy. An individual covered by an underinsurance policy is entitled to receive compensation in an amount no less than what he would receive if he had been injured by an uninsured motorist. *James v. Michigan Mut. Ins. Co.* (1985), 18 Ohio St.3d 386, 18 OBR 440, 481 N.E.2d 272. Thus, underinsured motorists who suffer from injuries caused by an automobile accident are entitled to collect up to the full limits of their underinsurance policy to the extent that their damages exceed the amounts which the tortfeasor's insurer has already paid to them. The

Savoies may collect up to the limits of their policy with Motorists to the extent that their damages exceeds the $225,000 which they are entitled to receive from Grange."

Thus, *Savoie* makes it clear that the "setoff" of $75,000 is from the total damages sustained by plaintiffs, not from the underinsured coverage of the Erie policy. We shall construe the judgment of the trial court to be consistent with *Savoie* and R.C. 3905.18, as construed thereby, rather than inconsistent therewith. With such a construction, the trial court did not err, since the "setoff" will be from the total damages which plaintiffs sustained, rather than from the policy limits of the Erie policy.

Plaintiffs also contend that the trial court erred in including the $25,000 policy of the tortfeasor Cottonbrook, contending that his policy was not available because, under the Erie policy, Erie would not recognize him as an uninsured or underinsured motorist because he was a "hit-and-run" motorist, whose vehicle had no contact with either plaintiffs' vehicle or the vehicle which struck plaintiffs. We find no merit to this contention, since the facts are that this motorist's insurer paid sixty percent of the policy limits or $15,000 as part of the settlement. Accordingly, we find no error on the part of the trial court in finding the available insurance coverage from the two underinsured motorists to be $75,000. Plaintiffs' first assignment of error is not well taken.

By plaintiffs' second assignment of error, they contend that the trial court erred in failing to deduct reasonable costs of litigation from the $75,000 setoff. We find no provision either in the statute or in the Erie policy requiring such a deduction for expenses of litigation against a tortfeasor from the amount recovered from said tortfeasor in applying uninsured or underinsured motorist coverage. Plaintiffs rely upon the doctrine of *quantum meruit,* contending that Erie has benefitted from the settlement and now should share in the costs necessary to obtain the settlement. If the total damages eventually be determined to be less than the policy limits of the tortfeasors, there will be no recovery under the underinsured motorist coverage of the Erie policy. Although plaintiffs contend their damages exceed the amount of the tortfeasors' combined policy limits, that is an issue of fact yet to be determined. Accordingly, plaintiffs' second assignment of error is not well taken.

For the foregoing reasons, both of plaintiffs' and both of defendant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas as construed herein is affirmed. Costs are assessed equally against the plaintiffs and defendant.

*Judgment affirmed.*

PETREE and DESHLER, JJ., concur.