OPINION
This timely appeal arises from the judgment of the Mahoning County Court of Common Pleas granting Appellee's motion for summary judgment, denying Appellants' motion for summary judgment and dismissing Appellants' action. For the following reasons, we affirm the judgment of the trial court.
The relevant facts are not in dispute. Thus, the matter was ripe for disposition via summary judgment. This case arises out of a fatal automobile accident which occurred on June 15, 1995. Angelo Locastro was negligently driving a vehicle in which Robert Powers, Jr. was a passenger. The automobile went out of control and Robert Powers, Jr. died in the resulting crash. The deceased's parents, Robert Powers, Sr. and Janet Powers, Appellants in this case, settled their claim against Locastro's liability insurer, Commercial Union Insurance Company, for the policy limits of $300,000.00.
At the time of the accident, Appellees had an insurance policy in effect with Appellants for uninsured/underinsured motorists coverage (hereinafter "UM/UIM"). This policy provided UM/UIM limits of $100,000.00 per person and $300,000.00 per occurrence. (Nationwide Policy No. 92-34-H-934-358). After exhausting the limits of the tortfeasor's liability insurance, Appellants filed a UM/UIM claim with Appellee. Appellees denied the claim, citing a provision in the policy which provided that any proceeds which might be payable under the UM/UIM policy would be reduced by any amount received from a third party as a result of the same claim. (pp. 3-4 of Endorsement of Robert Power's Nationwide Policy). Appellees asserted that since Appellants had received $300,000.00 from the tortfeasor's liability insurance carrier, Appellees could reduce their potential UM/UIM payments by that amount. As a result of this setoff, Appellees maintained that they owed Appellants no coverage under the UM/UIM policy.
On June 21, 1996, Appellants sought declaratory judgment with respect to Appellee's alleged obligation to pay the claim. Each party filed a motion for summary judgment. By judgment entry dated October 24, 1997, the trial court granted Appellee's motion for summary judgment, denied Appellants' motion for summary judgment and dismissed the action. In granting Appellee's motion, the trial court specifically found that Appellants' cause of action was governed by R.C. § 3937.18 as modified by Senate Bill 20 as opposed to the Ohio Supreme Court's interpretation of that statutory section in Savoie v. Grange Mutual Insurance Co. (1993), 67 Ohio St.3d 500. As a result, the court found that the setoff provision in the policy was enforceable. The court also found that Appellants were not entitled to stack coverage limits for each vehicle insured under the policy pursuant to the express terms of the policy.
It is from that decision that this appeal arises. In their sole assignment of error, Appellants assert:
 "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE APPELLEE, NATIONWIDE INSURANCE COMPANY."
Appellants' generalized assignment of error presents three issues for review. The first issue presented is as follows:
 "A. Issue Presented: Since Nationwide neither amended nor endorsed any `change in terms' in the parties [sic] policy agreement subsequent to Savoie and prior to its renewal preceding decedent's death in June 15, 1995, then the conditions for coverage for which Appellants [sic] paid consideration fully incorporated former O.R.C. 3937.18 as settled by the judicial construction in Savoie."
A declaratory judgment action allows a court of record to declare the rights, status and other legal relations of the parties. See
Civ.R. 57. Such an action is an appropriate mechanism for establishing the obligations of an insurer in a controversy between it and its insured as to the fact or extent of liability under a given policy.King v. Western Reserve Group (Dec. 1, 1997), Monroe App. No. 789, unreported, citing, Lessak v. Metropolitan Casualty Ins. Co. of N.Y.
(1958), 168 Ohio St. 153, 155. When a declaratory judgment is disposed of by summary judgment, our review of the trial court's decision is de novo. King, supra. It is well-settled that summary judgment is appropriate when:
 "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."
Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344,346.
As there were cross-motions for summary judgment, neither party suggests that there are any relevant factual disputes. The crux of the issue before this Court is to determine which form of the relevant law to apply. The statute in question is R.C. §3937.18 as amended by Senate Bill 20 (hereinafter "S.B.20"), which became effective on October 20, 1994. S.B.20 was a legislative response to the law as determined in Savoie v. GrangeMut. Ins. Co. (1983), 67 Ohio St.3d 500. In Savoie, the Court interpreted the statute to permit a plaintiff to recover his or her own UM/UIM limits in addition to the liability limits of the tortfeasor, up to the measure of damages suffered by the plaintiff. Brown v. Wallbrown (1997), Franklin App. No. 96APE12-1633, unreported, citing Savoie, supra at paragraph three of syllabus.
As a result of the Savoie decision, the General Assembly passed S.B.20 to amend R.C. § 3937.18. This statute, as amended, provides in relevant part:
 "[A] (2) Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages. . . . The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."
(emphasis added).
In short, prior to the enactment of S.B.20, a plaintiff could recover the limits of the tortfeasor's liability insurance policy and then collect from his or her own UM/UIM policy up to the policy limits and to the extent of the plaintiff's damages. When S.B.20 became effective, a plaintiff's UM/UIM policy limits would be reduced by the amount the plaintiff received from the tortfeasor's liability policy.
If the statute as defined by Savoie governs this matter, Appellants were entitled to collect under the UM/UIM policy up to the policy's limits and to the extent that Appellants' damages exceeded the amount available from the tortfeasor's liability policy. Savoie, supra. If, however, S.B.20 applies, the $300,000.00 Appellants received from the tortfeasor's liability would be subtracted from Appellants' $300,000.00 UM/UIM policy limits resulting in a complete off-set. R.C. § 3937.18(A)(2).
The Ohio Supreme Court has held that, "for the purposes of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into the contract for automobile liability insurance controls the rights and duties of the contracting parties." Ross v. FarmersIns. Group of Cos. (1998), 82 Ohio St.3d 281, 289. Appellants originally purchased UM/UIM insurance coverage from Appellees in 1989. The relevant "renewal" of the insurance policy with Appellees occurred on March 17, 1995. This renewal provided insurance coverage for the period of April 6, 1995 through October 6, 1995. R.C. § 3937.31(A) pertains to the two year rule applicable to the issuance of automobile insurance. This statute states in part:
 "Every automobile insurance policy shall be issued for a policy period of not less than two (2) years or guaranteed renewable for successive policy periods totalling not less than two (2) years . . ."
However, as the Ohio Supreme Court has noted, "such policies, when written for specific periods, may be considered term policies rather than continuing policies." Benson v. Rosler
(1985), 19 Ohio St.3d 41, 44. See e.g., Wolfe v. Wolfe (November 6, 1998), Montgomery App. No. 17111, unreported; Spoerndle v.Nationwide Mutual Insurance Co. (June 16, 1999), Summit App. No. 19289, unreported. As the policy at issue here provided coverage for a specific six month period, renewal of the policy after expiration of the original two year period mandated by R.C. §3937.31(A) coupled with acceptance of the paid premium constitutes a new contract of insurance. Id. This is consistent with our previous holding in Spence, et. al. v. National MutualIns. Co., et. al. (June 30, 1999), Consolidated Monroe App. Nos. 812, 803, 804, unreported, where this Court determined that a policy renewal occurring more than two years after the policy was originally purchased was to be treated as a new contract rather than a continuation of a pre-existing contract. See also, King v. Western Reserve Mutual Casualty Co. (March 15, 1999), Consolidated Monroe App. Nos. 805, 806, 807, unreported.
The effective date of S.B.20 was October 20, 1994. Consequently, only causes of action accruing prior to that date are to be governed by Savoie, supra, and the pre-S.B.20 version of R.C. § 3937.18. Cole v. Holland (1996), 76 Ohio St.3d 220,225. Appellants' cause of action against Appellee arose long after the effective date of S.B.20. The accident involving the decedent occurred on June 15, 1995, and Appellants exhausted the tortfeasor's liability insurance coverage several months later. A cause of action for UM/UIM coverage does not accrue until the tortfeasor's liability insurance coverage is exhausted. Kuhner v. Erie Ins. Co.
(1994), 98 Ohio App.3d 692.
At the time Appellants entered into the present contract for insurance coverage with Appellee, the statutory law in effect was the S.B.20 version of R.C. § 3937.18 which permitted, indeed mandated, a reduction in the UM/UIM limits by amounts payable from the tortfeasor's liability insurance coverage. See,Cartwright v. The Maryland Ins. Group (1995), 101 Ohio App.3d 439,442 (holding that the statutory law in effect at the time of renewal becomes part of the policy)
Nonetheless, Appellants maintain that R.C. 3937, as amended, does not apply to their UM/UIM claim because Appellees never revised the policy language or re-issued a new declarations page to reflect the substantive changes created by S.B. 20. As noted, Appellants first purchased insurance coverage from Appellees in 1989. At that time the policy provided Appellants with UM/UIM protection with certain conditions and limitations. One of the limits imposed on UM/UIM payments as reflected in the language of the policy stated in relevant part:
 "3. The limits of this coverage will be reduced by any amount paid by or for any liable parties.
 "4. Damages payable, if less than the limits of this coverage, will be reduced by any amount paid by or for any liable parties."
(pp. 3-4 of Endorsement 2352 of Robert Power's Nationwide Policy).
At the time this language was originally made a part of the policy, Hill v. Allstate Ins. Co. (1990), 50 Ohio St.3d 243, was the controlling case law interpreting R.C. § 3937.18. Hill
provided that an underinsurance carrier avoids responsibility to its insured when the limits of its policy are identical to the limits of the torfeasor's liability insurance. In 1983 the Ohio Supreme Court decided Savoie, supra, which held this to be a misinterpretation of the statute. Pursuant to Savoie, the policy provisions noted above providing for setoff were invalidated.Savoie, supra at paragraph 3 of syllabus. As a result of theSavoie decision, the General Assembly passed S.B.20 which amended R.C. § 3937.18, superseded Savoie's interpretation of the statute and mandated the exact type of setoffs that Savoie had invalidated.
Appellants argue that Savoie operated to legally remove the setoff language from their UM/UIM policy and that S.B.20 did not act to revive previously stricken policy provisions. Appellants maintain that unless Appellees reaffirmed this language by way of an amendatory endorsement to the policy after the effective date of S.B.20, these former policy provisions remained null and void.
We disagree. Savoie acted to temporarily invalidate the policy provisions regarding setoffs. However, less than one year later, the General Assembly enacted S.B.20 which reinforced the validity of the policy provisions at issue. The legislative history of S.B.20 leaves no doubt that the Savoie interpretation of R.C. § 3937.18 was contrary to the legislative intent when originally enacted and that the purpose of S.B.20 was to return the status of the law to what it was pre-Savoie. Particularly telling are Sections 7 and 8 which provide:
 "(7) It is the intent of the General Assembly in amending division (A)(2) of section 3937.18 of the Revised Code to supersede the effect of the holding of the Ohio Supreme Court in the October 1, 1993 decision in Savoie v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500, 620 N.E.2d 809 relative to the application of underinsured motorists coverage in those situations involving accidents where the tortfeasor's bodily injury liability limits are greater than or equal to the limits of the underinsured motorists coverage
 "(8) It is the intent of the General Assembly in amending division (A)(2) of section 3937.18 of the Revised Code to declare and confirm that the purpose and intent of the 114th General Assembly in enacting division (A)(2) of Section 3937.18 in Am. H.B. 489 was, and the intent of the General Assembly in amending section 3937.18 of the Revised Code in this act is, to provide an offset against the limits of the underinsured motorist coverage of those amounts available for payment from the tortfeasor's bodily injury liability coverage."
Sections 7 and 8 of Legislative History of Am. S.B.20 Amendments to R.C. § 3937.18.
Enacted into law and effective as of the date of the renewal of Appellants' insurance policy, R.C. § 3937.18, as amended, became a part of the policy and gave lawful force to the language as contained in the original policy. Benson v. Rosler (1985),19 Ohio St.3d 41, 45. Contrary to Appellants' argument, there was no need for Appellees to issue an endorsement or new policy because, as renewed, the language of the original policy contained the entire agreement. See, id. "In our view, the policy language was already in the policy and the renewals subsequent to the effective date of the amended statute operated to bring its original terms within the favor of the amended statute." Id.
As S.B.20 went into effect prior to the date Appellants renewed their insurance policy with Appellees, we find no merit in Appellants' argument that application of S.B.20 unconstitutionally impairs or otherwise interferes with contractual rights and/or obligations between the parties. R.C. § 3937.18, as amended by S.B.20, had no retroactive effect. This was the statutory law in effect at the time of contracting represented by the renewal of the insurance policy.
Appellants next present the following issue for review:
 "B. Issue Presented: Beneficiaries in a Wrongful Death Action Are Entitled to a Separate Limit of Coverage Under Their Underinsured Policy."
Appellants rely on the authority of Savoie for the proposition that beneficiaries in a wrongful death action each are entitled to a separate per person limit of coverage under their uninsured motorist policy.
We have previously held that Savoie is not the governing law relative to this case. It is R.C. § 3937.18, as amended by S.B.20, which controls. Section G of this statute provides that insurers offering UM/UIM coverage may:
 "include terms and conditions that preclude any and all stacking of such coverages . . ."
Section H of the same statute provides that insurers offering UM/UIM coverage may:
 ". . . include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the Declarations or policy, or vehicles involved in the accident."
Consistent with this permissive statutory language, the insurance policy at issue contains the following relevant provisions:
 "1. The bodily injury limit shown for any one person is for all legal damages, including all derivative claims, claimed by anyone arising out of and due to bodily injury to one person as a result of one occurrence. The per person limit is the total amount available when one person sustains bodily injury, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims or any other claims made by anyone arising out of bodily injury, including death, to one person as a result of one occurrence.
 "Subject to this per person limit, the total limit of our liability shown for each occurrence is the total amount available when two or more persons sustain bodily injury, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims or any other claims arising out of bodily injury, including death, to two or more persons as a result of one occurrence.
 "2. Coverage applies as stated in the Declarations. The insuring of more than one person or vehicle under this policy does not increase our Uninsured Motorists payment limits. In no event will any insured be entitled to more than the highest per person limit applicable under this or any other policy issued by us."
PP. 3-4 of Endorsement 2352 of Robert Power's Nationwide policy.
Applying the plain language of the above quoted statute and policy provisions, it is evident that there is no merit to Appellants' contention that they are entitled to separate per person coverage limits.
Appellants submit as their final issue the following:
 "C. Issue Presented: While Savoie provides that an insurer may contractually preclude intrafamily stacking of insured's four automobile insurance policies, for such provisions to be enforceable there must be evidence that the insured received multi-car discounts which resulted in reduced premiums for all policies."
Appellants argue that pursuant to the holding in Savoie, they are entitled to stack the coverage limits for each of the vehicles covered under the insurance policy issued by Appellees in the absence of a showing that Appellants received a multi-vehicle discount.
Appellants' position is based on their misinterpretation of dicta in a case which we have already held does not apply to the issues presented on this appeal. What does apply, as we have already stated, is R.C. § 3937.18 as amended by S.B.20. As noted above, section H specifically permits an insurer to prohibit an insured from stacking the coverage limits for each vehicle insured under the same policy. The language in the policy at issue does just that. Paragraph 2 of the Limits of Payment section of Endorsement 2352 provides that:
 "The insuring of more than one person or vehicle under this policy does not increase our Uninsured Motorists payment limits. In no event will any insured be entitled to more than the highest per person limit applicable under this or any other policy issued by us."
Based on the plain language of R.C. § 3937.18(H) and the above quoted policy provision, it is evident that there is no merit to Appellants' contention that they are entitled to stack the coverage limits for each vehicle covered under the insurance policy at issue.
As this Court has concluded that Savoie does not control the legal issues presented on appeal, we find that Appellants' sole assignment of error, including its subparts, lacks merit and is accordingly overruled. In their complaint, Appellants alleged that Appellee's denial of UM/UIM coverage constituted bad faith. Since Appellants do not argue on appeal that the trial court erred in granting summary judgment in favor of Appellees with respect to this claim, we need not, and therefore do not address this issue.
For all of the foregoing reasons, the trial court's decision to grant Appellee's motion for summary judgment and deny Appellants' motion for summary judgment is hereby affirmed.
Vukovich, J., concurs.
Cox, P.J., dissents; see dissenting opinion.
APPROVED:
 _________________________________ CHERYL L. WAITE, JUDGE