WINKHART et al., Appellants,

v.

STATE FARM INSURANCE COMPANY, Appellee.

[Cite as *Winkhart v. State Farm Ins. Co.* (1996), 116 Ohio App.3d 794.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 70279.

Decided Dec. 23, 1996.

*Friedman, Domiano & Smith Co., L.P.A.,* and *Jeffrey H. Friedman,* for appellants.

*Meyers, Hentemann, Schneider & Rea Co., L.P.A.,* and *Henry A. Hentemann,* for appellee.

———————

TIMOTHY E. MCMONAGLE, Judge.

Plaintiffs-appellants, Randall and Lisa Winkhart (hereinafter referred to singularly as "appellant"[1]), appeal the decision of the Cuyahoga County Common Pleas Court that granted summary judgment to defendant-appellee, State Farm Insurance Company.

The undisputed facts relevant to this appeal are as follows: On July 10, 1994, appellant sustained serious injuries when the motorcycle he was driving was struck by an automobile operated by Tracie Tackett. Tackett qualified as an insured under a policy issued by Progressive Insurance Company. This policy carried "per person" liability coverage limits of $12,500, which amount was duly paid to appellant on behalf of the tortfeasor. Also at the time of the accident, appellant was insured under two separate but identical policies issued by State Farm that provided underinsured-motorist coverage. Each policy insured different vehicles and provided "per person" liability coverage limits of $100,000. Furthermore, each policy contained the following antistacking provision:

"If There Is Other Similar Coverage

"1. If Other Policies Issued By Us To You Apply

"If two or more motor vehicle liability policies issued by us to *you* providing uninsured motor vehicle coverage apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability."

State Farm paid appellant $87,500, which represented one policy's "per person" liability limit of $100,000 less the $12,500 already paid by Progressive.

Appellant filed a complaint for declaratory judgment seeking a declaration that, pursuant to his underinsured-motorist coverage, he was entitled to each policy's $100,000 "per person" limit, for a total award of $200,000, exclusive of the $12,500 already paid by Progressive. State Farm moved for summary judgment, which the trial court granted without opinion.

———————

1. Although Randall Winkhart's wife, Lisa, is also a plaintiff-appellant in this case, it was Randall Winkhart who sustained sustain bodily injury as a consequence of the motor vehicle collision. In order to avoid confusion, appellants will collectively be referred to as "appellant" in this opinion.

Appellant timely appeals and assigns the following errors for our review:

"I. The trial court erred in granting summary judgment in favor of defendant-appellee State Farm Insurance Company, as defendant-appellee State Farm is not entitled to set off from its policy limits those amounts tendered to plaintiff-appellants by the tortfeasor's liability carrier.

"II. The trial court erred in granting summary judgment in favor of defendant-appellee State Farm Insurance Company, as plaintiff-appellants are entitled to collect the full $200,000.00 limits of the underinsured motorist policies issued to them by defendant-appellee State Farm Insurance Company."

## I

In reviewing a motion for summary judgment, an appellate court conducts a *de novo* review of the trial court's decision. "A court reviewing the granting of a summary judgment must follow the standards set forth in Civ.R. 56(C) * * *."[2] Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from such evidence that reasonable minds can come to but one conclusion and, viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to the party."[3]

In his first assignment of error, appellant contends that the trial court improvidently granted State Farm summary judgment because State Farm is not entitled to set off its payment to appellant by $12,500, the amount paid by Progressive. Relying on *Savoie v. Grange Mut. Ins. Co.*,[4] appellant contends that an insurer's right to setoff is against the total damages sustained by the injured party and not the policy coverage limits. State Farm, on the other hand, maintains that *Savoie* neglected to address the effect of R.C. 3937.18(A)(2), which specifically provides a right of setoff from the limits of the underinsured-motorist coverage. State Farm further contends that neither *Savoie* nor its progeny

---

2. *Aglinsky v. Cleveland Builders Supply Co.* (1990), 68 Ohio App.3d 810, 814, 589 N.E.2d 1365, 1368.

3. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

4. *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809. We note that *Savoie* was, in effect, overruled by Am.Sub.S.B. No. 20, effective October 20, 1994, which amended R.C. 3937.18; however, our decision here today is unaffected, as that legislation is not subject to retroactive application. See *Cole v. Holland* (1996), 76 Ohio St.3d 220, 225, 667 N.E.2d 353, 356–357.

overruled *James v. Michigan Mut. Ins. Co.*[5] or *In re Nationwide Ins. Co.*,[6] decisions that specifically upheld the right of setoff.

Issues affecting underinsured-motorist coverage have been considered and reconsidered in a plethora of cases emanating from the Supreme Court of Ohio in recent years. In an attempt to resolve the issue that arises when an injured party, seeking recovery pursuant to his underinsured-motorist coverage, suffers damages that exceed his policy limits after he has been partially compensated for those injuries by the tortfeasor's liability insurer, the Supreme Court of Ohio in *Cole v. Holland*[7] reaffirmed *Savoie* and held that insurers must set off proceeds received by their insured from the tortfeasor's liability insurer against the insured's *damages,* rather than against the written limits of the insured's policy.[8]

While State Farm acknowledges that this court is bound to and has followed the syllabus law of *Savoie*,[9] it argues that *Savoie* neglected to address the effect of former R.C. 3937.18(A)(2) and, therefore, setoff is permissible pursuant to this statutory provision. To the contrary, in reaffirming *Savoie*, the *Cole* court specifically referred to R.C. 3937.18 as follows:

"We hold that pursuant to *former R.C. 3937.18,* an underinsurance claim must be paid when the individual covered by an uninsured/underinsured policy suffers damages that exceed those monies available to be paid by the tortfeasor's liability carriers. In determining the amount of underinsurance coverage to be paid in a situation involving an accident governed by former R.C. 3937.18, the underinsurance provider is entitled to set off the amounts actually recovered from the tortfeasor's liability carriers *against the insured's total damages, rather than against its policy limits.*" (Emphasis added.)

State Farm further argues that neither *Savoie* nor its progeny expressly overruled or otherwise limited the holdings of *James v. Michigan Mut. Ins. Co.*[10] or *In re Nationwide Ins. Co.*,[11] both of which provide a right to setoff. While not

---

5. *James v. Michigan Mut. Ins. Co.* (1985), 18 Ohio St.3d 386, 18 OBR 440, 481 N.E.2d 272.

6. *In re Nationwide Ins. Co.* (1989), 45 Ohio St.3d 11, 543 N.E.2d 89.

7. *Cole v. Holland* (1996), 76 Ohio St.3d 220, 667 N.E.2d 353.

8. *Id.*

9. See *Finneran v. Bestor* (Nov. 2, 1995), Cuyahoga App. No. 68774, unreported, 1995 WL 643810; *Thorne v. GRE Ins. Group* (May 16, 1996), Cuyahoga App. No. 69390, unreported, 1996 WL 257453.

10. *James v. Michigan Mut. Ins. Co.* (1985), 18 Ohio St.3d 386, 18 OBR 440, 481 N.E.2d 272.

11. *In re Nationwide Ins. Co.* (1989), 45 Ohio St.3d 11, 543 N.E.2d 89.

specifically overruling either case, the *Cole* court expressly disapproved these cases to the extent that they are inconsistent with the court's decision.[12]

 Finding State Farm's arguments to be without merit and the decision in *Cole* controlling, we hold that State Farm is not entitled to set off the amount paid by Progressive against the proceeds appellant is entitled to receive pursuant to his underinsured-motorist coverage with State Farm. Consequently, appellant is entitled to the full underinsured-motorist coverage of $100,000.

Appellant's first assignment of error is sustained.

## II

In his second assignment of error, appellant contends he is entitled to collect the full underinsured-motorist coverage of both insurance policies because, while *Savoie* concluded that an insurer can include antistacking language so as to bar intrafamily stacking, State Farm has not demonstrated that appellant received a discount for purchasing the two policies. Appellant argues that, absent such evidence, the antistacking provision is contrary to *Savoie* and, therefore, unenforceable. State Farm, on the other hand, maintains that the discount language in *Savoie* is dicta and that, even if it were not dicta, State Farm did provide evidence that appellant received a discount through the affidavit of Mary Ellen Price, Underwriting Operations Superintendent for State Farm.

In holding that an insurer can contractually preclude intrafamily stacking, the *Savoie* court rationalized its decision by stating:

"In intrafamily stacking situations, insurers can provide reduced premiums for clients who purchase multiple uninsured/underinsured policies for separate vehicles. If the premium has been reduced, it logically follows that benefits can be restricted. However, the injured individual in an interfamily stacking scenario seeks to combine the limits of two policies for which premiums have not been reduced because of their mutual existence. Because insurers are attempting to prevent the full payment of two policy limits resulting from the full, unadjusted premium payment of two unrelated insurance policies, the contractual preclusion of interfamily stacking is unconscionable. We do not believe that the legislature intended to sanction such a practice."

It is undisputed that the policies appellant is attempting to stack are intrafamily policies and that, pursuant to the second syllabus of *Savoie*, an insurer may contractually preclude intrafamily stacking. What is disputed is whether *Savoie* requires evidence that the insured received a premium discount for purchasing multiple policies in order for the antistacking provisions to be enforceable.

---

12. *Cole, supra,* at 226, 667 N.E.2d at 357–358.

■ While State Farm is correct that the reduced premium language is not part of the syllabus law of *Savoie,* it is clear from that opinion that the court's decision was premised on the insurer's ability to offer reduced premiums in exchange for a restriction of benefits. Consequently, this court is persuaded that *Savoie* requires evidence of a reduced premium in order for an insurer to contractually preclude intrafamily stacking.[13] It therefore becomes necessary to look at the policies issued to appellant and the evidence provided by State Farm.

■ Both parties concede that appellant purchased two identical insurance policies, each policy covering a different vehicle.[14] Moreover, State Farm has offered the affidavit of its Underwriting Operations Superintendent, Mary Ellen Price, wherein she avers that appellant received multi-car discounts resulting in reduced premiums for both policies issued to him. As State Farm has complied with the identical rationale of *Savoie* in providing evidence of reduced premiums, State Farm is entitled to enforce the intrafamily antistacking provisions of appellant's policies; therefore, appellant is not entitled to stack the two policies. Consequently, the trial court did not err in granting State Farm judgment in its favor as a matter of law on this issue.

Accordingly, appellant's second assignment of error is overruled.

*Judgment affirmed in part*
*and reversed in part.*

BLACKMON, P.J., and DYKE, J., concur.

---

13. See *Viccarone v. Colonial Penn Ins. Co.* (Feb. 23, 1995), Cuyahoga App. No. 66822, unreported, 1995 WL 79789. In *Keppel v. Keppel Estate* (1996), 76 Ohio St.3d 231, 667 N.E.2d 360, the Supreme Court of Ohio determined that a conflict existed between *Keppel* and *Viccarone.* While the issue in *Viccarone* did not involve intrafamily stacking, the rationale employed in *Savoie* in permitting intrafamily stacking was used to support this court's decision. Consequently, the ultimate resolution of this conflict is not germane to the instant case.

14. The record reflects that only one of the two insurance policies is part of the record (Policy No. 677 7492–D19–35C). However, the parties agree that the policies are identical except that each insures a different vehicle.