JOURNAL ENTRY and OPINION
{¶ 1} Kenneth M. Kulikowski, as executor of the estate of his wife, Nancy A. Kulikowski, appeals from a judgment of the common pleas court which declared that he could recover underinsured motorist coverage from only one of his two State Farm Mutual Automobile Insurance Company policies. State Farm cross-appeals from this same order arguing that the court erred in declaring he could recover from either policy.
 {¶ 2} Kulikowski also appeals from two separate orders, one which granted Federal Insurance Company's motion for summary judgment in connection with his Scott-Pontzer cross-claim, and a subsequent order which denied his motion to amend his cross-claim to include a secondScott-Pontzer claim under Federal's commercial excess policy.
 {¶ 3} After careful review of the record and applicable law, we have concluded that the court should have entered summary judgment in favor of State Farm, that it properly entered summary judgment in favor of Federal, and that it properly exercised its discretion in denying Kulikowski's motion to amend his cross-claim. Accordingly, we reverse the judgment of the trial court in part and enter summary judgment in favor of State Farm, but affirm in all other respects.
 {¶ 4} The record on appeal reveals that, on January 25, 1994, State Farm issued automobile policy no. 467 9573-A25-35E to Kulikowski which contained uninsured/underinsured motorist coverage with limits of $100,000 per person and $300,000 per accident. On June 13, 1994, State Farm issued policy no. 483 2781-F13-35G to Kulikowski with the same UM/UIM limits.
 {¶ 5} Thereafter, the circumstances which gave rise to this case arose on October 24, 1996, when Lawrence Geis negligently operated an overloaded tractor-trailer owned by his employer, Nat Farinacci 
Sons, Inc., eastbound on Route 2 in Eastlake, Ohio, rear-ending a 1990 Honda Accord operated by Nancy Kulikowski, crushing her car and forcing it into two other vehicles, tragically resulting in her death.
 {¶ 6} Geis and Farinacci settled other claims arising out of the accident for an aggregate of $29,000 and then settled with Kulikowski's estate for $971,000, thereby exhausting their $1 million policy limits. In addition, Kulikowski settled with the Estate of Frances Nutter, the majority owner of Nat Farinacci Sons, Inc., for $22,500 and with Akzo-Nobel, Inc., the company which allegedly overloaded Geis' tractor-trailer for $25,000.
 {¶ 7} Kulikowski next filed a declaratory judgment action against his own carrier, State Farm, to recover underinsured motorist coverage on two policies, each with maximum coverages of $100,000 per person and $300,000 per accident. Thereafter, both Kulikowski and State Farm filed motions for summary judgment on this declaratory action.
 {¶ 8} On July 15, 1999, the trial court, after denying State Farm's motion, declared that Kulikowski could recover up to $300,000 from one of the State Farm policies but could not stack underinsured coverage on both policies.
 {¶ 9} State Farm appealed, but we dismissed that appeal for lack of a final order because the court had not determined damages. On remand, State Farm filed a third-party complaint for declaratory judgment against Federal Insurance Companies in connection with a business auto policy it had issued to Nancy Kulikowski's employer, the Lincoln Electric Company. On May 3, 2000, Kulikowski filed a Scott-Pontzer cross-claim against Federal seeking underinsured motorist coverage under that policy.
 {¶ 10} On June 26, 2000, Federal moved for summary judgment, and thereafter, on November 1, 2000, the court granted Federal's motion and declared that, as a matter of law, the policy did not provide underinsured motorist coverage for the subject accident.
 {¶ 11} On November 22, 2000, Kulikowski sought leave to amend his cross-claim against Federal to include a second Scott-Pontzer claim under a commercial excess policy which Federal had issued to Lincoln Electric. The court denied this motion on March 28, 2001.
 {¶ 12} Subsequently, Kulikowski and State Farm stipulated that Kulikowski suffered damages in an amount at least $600,000 greater than the sum he had already received through other settlements, and on July 17, 2001, the court entered judgment in favor of Kulikowski and against State Farm in the amount of $300,000, in conformity with its earlier decision.
 {¶ 13} Kulikowski now appeals and raises four assignments of error for our review. The first states:
 {¶ 14} "PLAINTIFFS ARE ENTITLED TO COVERAGE UNDER BOTH STATE FARM POLICIES BECAUSE STATE FARM MADE A BINDING, JUDICIAL ADMISSION THAT BOTH POLICIES IN EFFECT AT THE TIME OF THE ACCIDENT WERE ENTERED INTO BEFORE THE OCTOBER 20, 1994 EFFECTIVE DATE OF SB 20."
 {¶ 15} We will consider this assignment of error together with State Farm's cross-assignment of error, which states:
 {¶ 16} "THE TRIAL COURT ERRED IN DENYING THE MOTION OF DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, IN PART, AND IN DECLARING THAT UNDERINSURED MOTORIST COVERAGE WAS AVAILABLE TO PLAINTIFF UNDER ONE OF THEIR STATE FARM POLICIES WHERE BOTH INSURANCE POLICY CONTRACTS WERE `NEW' CONTRACTS OF INSURANCE, PURSUANT TO WOLFE V. WOLFE (2000), 88 Ohio St.3d 246, ENTERED INTO AFTER THE EFFECTIVE DATE OF AM.SUB.S.B. NO. 20 (`SB-20') AND THE COVERAGE ISSUES IN THIS CASE ARE, THUS, CONTROLLED BY SB-20."
 {¶ 17} On appeal, Kulikowski argues that the case of Savoie v.Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, applies to this case and, pursuant thereto, he should be permitted to stack the underinsured motorist coverage contained in the two State Farm policies. State Farm, on the other hand, asserts that Senate Bill 20 applies to his case, not Savoie, and it asserts that R.C. 3937.18(G) and the conforming language of the policies prohibit stacking; it further argues that, pursuant to the set-off provision in R.C. 3937.18(A)(2), Kulikowski is not entitled to any underinsured motorist coverage because the policies' $300,000 limits are less than the $971,000 settlement he received from the tortfeasor's insurer; State Farm therefore argues that the trial court erred in denying its motion for summary judgment.
 {¶ 18} Thus, the central issue we are called upon to decide is whether the holding in Savoie v. Grange or the provisions of Senate Bill 20 applies to the facts in this case. If Savoie applies, Kulikowski claims entitlement to stack the coverage from both State Farm policies; however, if Senate Bill 20 applies, he is not entitled to coverage under either policy. The parties here recognize that Senate Bill 20 has an effective date of October 20, 1994.
 {¶ 19} In Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327, 364 N.E.2d 267, the court set forth the following standard for summary judgment under Civ.R. 56(C):
 {¶ 20} "Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."
 {¶ 21} Kulikowski claims that, based on "binding judicial admissions" made by State Farm in its motion for summary judgment, he has evidence to support the proposition that State Farm issued policy no. 467 on January 25, 1994, and policy no. 483 on June 13, 1994, and that both policies were effective at the time of the accident as issued on those respective dates; therefore, he urges that Savoie applies to this case because both were issued prior to the effective date of Senate Bill 20.
 {¶ 22} State Farm, on the other hand, relying on an affidavit of its records custodian Mary Ellen Price, argues that it originally issued policy no. 467 on January 25, 1978, and that it issued policy no. 483 on June 13, 1979. By operation of law, however, State Farm contends these policies became new insurance contracts every two years from those inception dates, and it therefore asserts that the policies in question had contract renewal dates of January 25, 1996, and June 13, 1995 — subsequent to the effective date of Senate Bill 20.
 {¶ 23} Notwithstanding Kulikowski's contentions of "binding judicial admissions," the respective declarations pages of the policies evidence the effective dates of the renewal contract policies: the declaration page for policy no. 467 indicates that State Farm issued it on January 25, 1994 and that it had a guarantee period from its inception to January 25, 1996; and the declaration page for policy no. 483 indicates that State Farm issued it on June 13, 1994, with a two-year guarantee period.
 {¶ 24} Both Kulikowski and State Farm recognize that the syllabus in Ross v. Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281,695 N.E.2d 732 states in relevant part:
 {¶ 25} "* * * the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties."
 {¶ 26} As the court stated in its syllabus in Wolfe v. Wolfe
(2000), 88 Ohio St.3d 246, 725 N.E.2d 261:
 {¶ 27} "1. Pursuant to R.C. 3937.31(A), every automobile liability insurance policy issued in this state must have, at a minimum, a guaranteed two-year policy period during which the policy cannot be altered except by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39.
 {¶ 28} "2. The commencement of each policy period mandated by R.C. 3937.31(A) brings into existence a new contract of automobile insurance, whether the policy is categorized as a new policy of insurance or a renewal of an existing policy."
 {¶ 29} In Wolfe, after determining the original issuance date of the automobile liability insurance policy, the court counted successive two-year periods from the issuance date in an effort to determine whether the policy renewed after the October 20, 1994 effective date of Senate Bill 20.
 {¶ 30} Similarly here, in accordance with Wolfe, the facts reveal that policy no. 467 began on January 25, 1978 and renewed on January 25, 1996, and policy no. 483 began on June 13, 1979 and renewed on June 13, 1995, both renewals occurring after the effective date of Senate Bill 20.
 {¶ 31} R.C. 3937.18(G) legislatively overruled the distinction inSavoie at its progeny, including our court's pronouncement in Winkhartv. State Farm Ins. Co. (1996), 116 Ohio App.3d 794, 689 N.E.2d 120, between full and discounted policies. R.C. 3937.18(G) provides:
 {¶ 32} "(G) Any policy of insurance that includes uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages may, without regard to any premiums involved, include terms and conditions that preclude any and all stacking of such coverages, including but not limited to:
 {¶ 33} "(1) Interfamily stacking, which is the aggregating of the limits of such coverages by the same person or two or more persons, whether family members or not, who are not members of the same household;
 {¶ 34} "(2) Intrafamily stacking, which is the aggregating of the limits of such coverages purchased by the same person or two or more family members of the same household." (Emphasis added).
 {¶ 35} In this case, both State Farm policies included the following anti-stacking provision in Endorsement 6090MM:
 {¶ 36} "If There Is Other Uninsured Motor Vehicle Coverage
 {¶ 37} "1. Any and all stacking of uninsured motor vehicle coverage is precluded."
 {¶ 38} We have concluded that the anti-stacking provisions of R.C. 3937.18(G) apply to this case and Kulikowski's arguments underSavoie are inapplicable. As such, pursuant to R.C. 3937.18(G) and the conforming language of the subject policies, the court correctly determined that Kulikowski could not stack the underinsured motorist coverage from his two State Farm policies. Accordingly, his first assignment of error is overruled.
 {¶ 39} With respect to State Farm's cross-appeal and the set-off issue, R.C. 3937.18(A)(2), as amended by Senate Bill 20, provided in part:
 {¶ 40} "* * * Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."
 {¶ 41} As the court stated in its syllabus in Motorists Mut. Ins.Co. v. Andrews (1992), 65 Ohio St.3d 362, 604 N.E.2d 142:
 {¶ 42} "When determining whether a motorist is underinsured within the meaning of R.C. 3937.18(A)(2), the amount actually available for payment under the tortfeasor's liability insurance policy must be compared with the insurer's underinsured motorist coverage limits. If the amount available for payment is less than the insured's underinsured policy limits, then the insured is entitled to underinsured motorist coverage." (Emphasis added.)
 {¶ 43} Both State Farm policies at issue in this case defined "uninsured motor vehicle" as:
 {¶ 44} "1. a land motor vehicle, the ownership, maintenance or use of which is
 {¶ 45} "* * *
 {¶ 46} "b. insured or bonded for bodily injury liability at the time of the accident; but
 {¶ 47} "* * *
 {¶ 48} "(2) the limits of liability
 {¶ 49} "(a) are less than the limits you carry for uninsured motor vehicle coverage under this policy; or * * *"
 {¶ 50} Thus, according to the policy language, we must compare the amount of available insurance from the tortfeasor with the policy limits of Kulikowski's State Farm policies. Here, because the amount of insurance available from the tortfeasor's insurer, $971,000, exceeded Kulikowski's $300,000 UM/UIM policy limits, he is not entitled to underinsured motorist coverage from State Farm. Therefore, based on the set-off provision of R.C. 3937.18(A)(2) and the language of the State Farm policies, the trial court should have granted State Farm's motion for summary judgment.
 {¶ 51} Accordingly, we sustain State Farm's cross-assignment of error, reverse the judgment of the trial court, and enter judgment for State Farm on this issue.
 {¶ 52} In his second assignment of error, Kulikowski challenges the constitutionality of Senate Bill 20:
 {¶ 53} "SENATE BILL 20 IS UNCONSTITUTIONAL."
 {¶ 54} In challenging the constitutionality of Senate Bill 20, Kulikowski "incorporates by reference" the arguments made by the Ohio Academy of Trial Attorneys in Waite v. Progressive Ins. Co. (1999), 85 Ohio St.3d 1226, 710 N.E.2d 275, appeal dismissed as improvidently allowed. He concedes, however, that our court rejected constitutional challenges in Washington v. Citizens Security Mut. Ins. Co. (Sept. 21, 2000), Cuyahoga App. No. 76082. Nevertheless, he raises the same argument here "only to preserve it for appeal in the event the Ohio Supreme Court determines, while this action is pending, that Senate Bill 20 is unconstitutional."
 {¶ 55} Initially, we note that the Rules of Appellate Procedure do not permit parties to "incorporate by reference" arguments from other sources. As we stated in Powers v. Pinkerton, Inc. (Jan. 18, 2001), Cuyahoga App. No. 76333:
 {¶ 56} "* * * [T]hroughout his appellate brief, appellant claims to `incorporate by reference' briefs filed with the trial court. This is nothing more than an attempt to circumvent the forty page limit imposed by Loc.App.R. 16(A). Pursuant to App.R. 16, arguments are to be presented within the body of the merit brief. Therefore, we will disregard any argument not specifically and expressly addressed in the appellate briefs. Accord Williams v. Waller, (Dec. 26, 1996), Cuyahoga App. No. 69069, unreported."
 {¶ 57} Kulikowski has failed to present, within the body of his brief, any constitutional challenge to Senate Bill 20, and therefore, pursuant to App.R. 16(A)(7) and App.R. 12(A)(2), we may disregard this assignment of error.
 {¶ 58} In its brief, Federal relies on Beagle v. Walden (1997),78 Ohio St.3d 59, 676 N.E.2d 506, to support the proposition that Senate Bill 20 is constitutional. In that case, however, the Supreme Court held only that Senate Bill 20 did not violate the one-subject rule. To date, the Ohio Supreme Court has not addressed any other constitutional challenge to Senate Bill 20. See Schaffer v. State Farm Auto. Ins. Co.
(2001), 92 Ohio St.3d 1410, 748 N.E.2d 545 (the court declined to answer certified questions on whether Senate Bill 20 is unconstitutional on any grounds).
 {¶ 59} As Kulikowski concedes in his brief, however, we have rejected constitutional objections to Senate Bill 20 in Washington, supra. In addition, other appellate districts have also consistently upheld the constitutionality of Senate Bill 20. See, e.g., Berry v.Przyborowski (Nov. 19, 1999), Miami App. No. 99-CA-21 [Second Appellate District]; Stinson v. Progressive Ins. Co. (Apr. 27, 2001), Ottawa App. No. OT-00-046 [Sixth Appellate District]; Rulong v. Allstate Ins. Co.
(Feb. 25, 2000), Jefferson App. No. 97 JE 61 [Seventh Appellate District]; Nitchman v. Nationwide Mut. Fire Ins. Co. (Jan. 17, 2001), Lorain App. No. 99CA007506 [Ninth Appellate District]; Scancarello v.Erie Ins. Co. (Feb. 13, 2001) Franklin County App. No. 00AP-130 [Tenth Appellate District]; Ball v. Guar. Nat'l Ins. Co. (2001),144 Ohio App.3d 145, 759 N.E.2d 830 [Twelfth Appellate District].
 {¶ 60} Based on the foregoing, and in conformity with our decision in Washington, supra, and the decisions of other appellate districts, we overrule this assignment of error.
 {¶ 61} In the third assignment of error, Kulikowski asserts entitlement to underinsured motorist coverage in connection with aScott-Pontzer claim:
 {¶ 62} "PLAINTIFFS ARE ENTITLED TO UNDERINSURED MOTORIST COVERAGE UNDER THE FEDERAL INSURANCE POLICY AND FEDERAL SHOULD NOT BE ALLOWED TO ENFORCE A FORFEITURE BY A DELAY IN NOTICE THAT DID NOT CAUSE FEDERAL ANY PREJUDICE."
 {¶ 63} Kulikowski filed a Scott-Pontzer cross-claim against Federal Insurance Company based on a business auto policy it had issued to Nancy Kulikowski's employer, Lincoln Electric Company, which contained policy limits of $1 million. He claims entitlement to $29,000 from that policy, the difference between Federal's $1 million limits and the $971,000 he received from the tortfeasor's insurer. He also urges that Federal is not entitled to set off its liability from the settlements he received from other sources which were not "persons liable to the insured," and he claims that Federal is not entitled to enforce the notice provision of its policy.
 {¶ 64} Federal counters that Kulikowski has already recovered more than $1 million as a result of the subject accident: $971,000 from the tortfeasor's insurer, $22,500 from the Estate of Frances Nutter, and $25,000 from Akzo-Nobel, Inc. Therefore, in conformity with R.C.3937.18(A)(2) and the language of its policy, it asserts the right to set off its liability from Kulikowski's aggregate recovery. It further contends that Kulikowski forfeited underinsured motorist coverage because he failed to comply with the notice provision in the policy in that he settled with the responsible parties without first notifying Federal.
 {¶ 65} The focus of this assignment of error concerns whether the Estate of Frances Nutter and Akzo-Nobel, Inc. are "persons liable to the insured." Kulikowski urges that there is no evidence that either Frances Nutter or Akzo-Nobel, Inc. did anything that caused Nancy Kulikowski's death. He also claims that the settlements with them were not made from bodily injury liability bonds and insurance policies.
 {¶ 66} We begin our analysis with Clark v. Scarpelli (2001),91 Ohio St.3d 271, 744 N.E.2d 719, where the court stated in its syllabus:
 {¶ 67} "For the purpose of setoff, the `amounts available for payment' language in R.C. 3937.18(A)(2) means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier)."
 {¶ 68} The court then stated at page 276:
 {¶ 69} "As can be gleaned from the public policy behind the enactment of the underinsured motorist statute, as well as the statutory language, the purpose of underinsured (and uninsured) motorist coverage is to treat injured automobile liability policyholders the same whether a tortfeasor is underinsured or uninsured. It is apparent from the foregoing that the General Assembly intended that when a person carries automobile liability insurance and that person is injured in an accident by an uninsured or underinsured tortfeasor, the insured policyholder may be compensated up to the limits of his or her applicable uninsured/underinsured motorist coverage for any losses sustained.
 {¶ 70} "Based on this premise, we construe the `amounts available for payment' language in R.C. 3937.18(A)(2), as amended by S.B. 20, as requiring a comparison between the amounts that are actually accessible to the injured claimant from the tortfeasor's automobile liability insurance carrier and the injured claimant's own underinsured motorist coverage limits. The phrase `amounts available for payment' means just that. In other words, it means those amounts the insured actually recovers from a tortfeasor whose liability policy is subject to the claim of the insured and also to the claims of other injured persons."
 {¶ 71} Kulikowski argues that the settlement money he received from the Estate of Frances Nutter and Akzo-Nobel, Inc. should not be included in the set-off amount, urging that R.C. 3937.18(A)(2) requires set-off only be made from monies received from a liability bond or insurance policy. Such a distinction is contrary to the court's view that "amounts available for payment" means amounts actually recovered from a tortfeasor. Therefore, this argument is not well taken.
 {¶ 72} He also argues that Federal failed to prove that Nutter and Akzo-Nobel were "persons liable" to him. However, he does not dispute that the Estate of Frances Nutter owned a majority of Nat Farinacci Sons, Inc. before its bankruptcy, or that he had alleged that Akzo-Nobel, Inc. negligently overloaded the tractor-trailer involved in this accident.
 {¶ 73} Upon review, we have concluded that Nutter and Akzo-Nobel were "persons liable" to Kulikowski for this accident; thus, he has received an aggregate settlement in excess of the $1 million limit in Federal's business auto policy, and, pursuant to Federal's set-off rights under that policy and R.C. 3937.18(A)(2), it is not contractually liable to provide Kulikowski underinsured motorist coverage in this case. Based on this conclusion, it is not necessary to reach the notice issue raised by Federal, and we make no determination in this regard.
 {¶ 74} Based on the foregoing, we have concluded that the court properly granted Federal's motion for summary judgment, and we affirm that order and reject this assignment of error.
 {¶ 75} Kulikowski's fourth assignment of error states:
 {¶ 76} "THE TRIAL COURT ABUSED ITS DISCRETION IN REFUSING TO ALLOW PLAINTIFFS TO AMEND THEIR COMPLAINT TO ALLEGE A CLAIM UNDER THE FEDERAL `COMMERCIAL EXCESS' POLICY."
 {¶ 77} Kulikowski here argues that the court abused its discretion in denying him an opportunity to amend his cross-claim against Federal to include a new Scott-Pontzer claim. His original cross-claim asserted aScott-Pontzer claim under a $1 million business auto policy issued by Federal to Lincoln Electric, Nancy Kulikowski's employer at the time of her death. Kulikowski sought to amend his cross-claim to include a secondScott-Pontzer claim under an additional $1 million commercial excess policy which Federal issued to Lincoln Electric.
 {¶ 78} Kulikowski claims that because he did not learn of the existence of the excess policy until Federal produced it on July 25, 2000, he timely filed his motion to amend his cross-claim and, according to court rule, leave to do so should have been freely granted.
 {¶ 79} Federal's position is that Kulikowski did not file a timely motion to amend because he waited until November 22, 2000, almost four months after he received the commercial excess policy, and almost a month after the court had granted summary judgment to Federal, before he chose to file his motion to amend. It further argues that Kulikowski failed to demonstrate that he would have had a viable claim under the commercial excess policy.
 {¶ 80} The central issue presented here then is whether Kulikowski timely filed his motion to amend his cross-claim. Our analysis begins with Civ.R. 15(A), which states in pertinent part:
 {¶ 81} "(A) A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty-eight days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires. * * *"
 {¶ 82} In Peterson v. Teodosio (1973), 34 Ohio St.2d 161,297 N.E.2d 113, the court stated in its syllabus:
 {¶ 83} "It is an abuse of discretion for a court to deny a motion, timely filed, seeking leave to file an amended complaint, where it is possible that plaintiff may state a claim upon which relief may be granted and no reason otherwise justifying denial of the motion is disclosed." (Emphasis added.)
 {¶ 84} Our role in reviewing the trial judge's Civ.R. 15(A) decision is limited to determining whether it abused its discretion. SeeWilmington Steel Prod., Inc. v. Cleveland Elec. Illuminating Co. (1991),60 Ohio St.3d 120, 122, 573 N.E.2d 622.
 {¶ 85} As the Fourth Appellate District stated in Easterling v.American Olean Tile Co., Inc. (1991), 75 Ohio App.3d 846, 851,600 N.E.2d 1088:
 {¶ 86} "While there does not appear to be any set time limit beyond which a motion to amend would be deemed untimely, the Supreme Court has held that such motions filed eleven and seven days before trial are `patently' untimely. Wilmington Steel Products, Inc., supra, 60 Ohio St.3d at 123, 573 N.E.2d at 625. Furthermore, decisions by the appellate courts of this state tend to indicate that there is a certain stage in litigation beyond which it becomes increasingly difficult to find an abuse of discretion in the denial of a motion to amend. See, e.g., DiPaolo, supra, 51 Ohio App.3d at 170, 555 N.E.2d at 973 (no abuse of discretion when the proposed amendment is sought after trial has been set and nine months after the complaint was originally filed); Meadors v. Zaring Co. (1987), 38 Ohio App.3d 97, 526 N.E.2d 107 (no abuse of discretion in denying motion to amend complaint to assert a new negligence claim when discovery had been completed and summary judgment had been orally granted, but not yet journalized); see, also, Somermeier v. First Natl. Bank (1968), 17 Ohio App.2d 136, 139, 46 O.O.2d 172, 174, 244 N.E.2d 782, 785 (a pre-rules case where no abuse of discretion was found in denying leave to file an amended pleading tendered during a hearing on a summary judgment motion)."
 {¶ 87} In the instant case, Kulikowski filed his motion to amend more than two years after he had filed his original complaint, nearly four months after he had received a copy of the excess policy, and almost a month after the court terminated Federal's involvement in the case by granting its motion for summary judgment.
 {¶ 88} In this case, based on Kulikowski's efforts to file a new claim against Federal on its excess policy and because Kulikowski has offered no explanation to justify the four-month delay in filing his motion to amend after learning of the existence of the second policy, we have concluded, in conformity with Easterling, supra, that this motion is not timely filed. Accordingly, the trial court's denial does not reflect an arbitrary, capricious, or unconscionable attitude, and the court, therefore, properly exercised its discretion in denying this motion. We therefore reject this assignment of error.
 {¶ 89} We reverse the judgment of the trial court in part and enter summary judgment in favor of State Farm, but affirm the judgment of the trial court in all other respects.
It is ordered that appellee State Farm recover of appellants its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, J., CONCURS, ANNE L. KILBANE, P.J., CONCURS INJUDGMENT ONLY.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).